(36 South. 808.)

No. 15,145.

## WHEADON v. TURREGANO.*

(May 23, 1904.)

ALTERATION OF INSTRUMENTS—PRESUMPTIONS
—LEASE—BURDEN OF PROOF.

1. Erasures or interlineations in the substantial part of an instrument are presumed to be false or forged, and must be satisfactorily accounted for before the instrument can be received in evidence. This is the civil-law doctrine. McMicken v. Beauchamp, 2 La. 290; Pipes v. Hardesty, 9 La. Ann. 152, 61 Am. Dec. 202.

2. The English rule, adopted in some of the states, seems to be different; but, when the circumstances are suspicious, the burden of removing the suspicion is upon the party seeking to use the instrument. Jones, Law of Evidence, § 578 et seq.

3. Where a lease was executed in duplicate, and it appeared that the instrument retained by the lessor showed the erasure of an important clause which was not erased in the duplicate delivered to the lessee, held, that the burden of proof was on the lessor to show that the erasure was made before signing, or with the consent of the lessee.

(Syllabus by the Court.)

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Action by Thomas C. Wheadon against Jules P. Turregano. Judgment for plaintiff, and defendant appeals. Reversed.

Robert P. Hunter & Sons, for appellant. Andrews & Hakenyos and Hunter & Hunter, for appellee.

LAND, J. This is an ejectment suit under the landlord and tenant act (Rev. St. 1870, § 2155; Act No. 52, p. 84, of 1900).

The main issue is one of fact, to wit, whether a certain renewal clause embraced in the original duplicate drafts of the contract of lease was stricken out, or agreed to be stricken out, before the parties signed the two instruments.

*Rehearing denied June 22, 1904.

The plaintiff produced one of these duplicates, with said clause erased.

The defendant produced the other duplicate, with the same clause intact.

Plaintiff testified positively that he struck out the renewal clause in his duplicate before signing, and, through inadvertence, failed to strike out the same clause in the duplicate retained by the defendant, and that it was the distinct understanding of the parties that said clause should be stricken out in both instruments.

Defendant testified with equal positiveness that there was no such understanding, and that the clause was not stricken out in either of the duplicates before signing and delivery.

The district judge assigned the following reason for his judgment in favor of plaintiff, viz.:

"In this case there seems to be some great mistake between plaintiff and defendant as to their agreement. In one of the duplicate copies there are several items erased, while in the other it is not. One witness swears one way, and the other just to the contrary.

"Wheadon swears affirmatively, and Turregano negatively. Both are credible witnesses and persons.

"On that portion of the contract which is erased, unless there is perjury, there could not have been any agreement as to whether the lease was to be extended at the option of Turregano, and, unless there was that consent between these two people as to that clause, then there was really no contract; and, as the lease of Wheadon expired on the 1st of January, I think the lease of Turregano expired at that moment."

In reaching this conclusion, the judge ignored the written instrument signed by both parties, which, as drafted, contained the renewal clause.

The issue of fact presented was whether or not the erasure in plaintiff's duplicate was made before signing.

Plaintiff so testified, but defendant testified to the contrary, and produced his duplicate, in which the renewal clause appears intact.

If, as the district judge certifies, both parties are "credible witnesses and persons," and their statements are irreconcilable, the balance should incline against the party on whom rests the burden of proof.

In McMicken v. Beauchamp, 2 La. 290, decided in 1839, the court held that, according to the civil law, erasures or interlineations in the substantial part of an instrument are presumed to be false or forged, and must be satisfactorily accounted for before the instrument can be received in evidence. See, also, Pipes v. Hardesty, 9 La. Ann. 152, 61 Am. Dec. 202.

The English rule seems to be that "alterations and interlineations appearing on the face of a deed are, in the absence of all evidence relating to them, presumed to have been made before the deed was completed." Jones, Law of Evidence, vol. 2, § 578.

According to this writer, the jurisprudence on this subject in the United States is conflicting; some courts holding the English doctrine, others that a material alteration will be presumed to have been made after the execution of the contract, and still others that there is no presumption of law as to the time when the alterations or erasures were made. Id. § 578 et seq.

After stating the conflict of jurisprudence, Mr. Jones concludes as follows, viz.:

"It is apparent that there is great confusion of the authorities on this subject. But whatever conflict of opinion there may be as to the legal presumptions to be raised, there seems to be quite general concurrence in the view that when suspicious circumstances, tending to discredit the document, appear either upon its face or from intrinsic facts, the burden of removing such suspicion is upon the party seeking to use the instrument." Id. § 579.

In the case at bar the fact that the duplicate contract of lease delivered to defendant contained the renewal clause, which appears erased in the duplicate retained by the plaintiff, and the further fact that defendant testified that such clause was in both instruments at the time of their execution and delivery, certainly imposes on plaintiff, claiming the benefit of the erasure, the burden of proof to show that it was made with the consent of the other party defendant herein.

Plaintiff practically assumed that onus by endeavoring to account for the erasure in his duplicate, and its absence in the duplicate handed to defendant.

Plaintiff was the lessee of the Rapides Hotel, and was also one of the stockholders of the corporation which owned said building.

In June, 1901, he was very desirous of obtaining a tenant for the hotel bar and club-rooms. He sent a messenger to defendant with the proposition to lease said rooms for the monthly price of $150.

Defendant considered the price too high, and was uncertain about leasing, and wanted a trial for six months, with the privilege of either renewing the lease or giving it up.

This is the substance of the messenger's testimony.

The parties thus brought together negotiated, and defendant made memoranda of the agreement reached between them. Defendant carried these memoranda to J. C. Blackman, Esq., and requested him to put the lease in due form.

Blackman, in his testimony, said:

"Turregano came to my office in the forenoon, and gave me a memoranda, and told me he wanted me to write a lease between Wheadon and himself, and he had it already prepared—the continuance of the lease, and, in fine, all he wanted to go in the lease—and all he wanted me to do was to put it in form."

Mr. Blackman had the lease typewritten in duplicate, and gave the instruments to the defendant, who took them to plaintiff for ex-

ecution. Plaintiff read and revised both documents and signed them; retaining one, and delivering the other to defendant. It is conceded that, before signing, plaintiff erased certain words in both documents, and interlined the words "continuance of present lease of ——— to." This change made no real difference in the meaning of the clause. Immediately following was the following sentence in both duplicates, viz.: "And should the party of the first part renew his lease and take advantage of the privilege of renewal that is granted him, this privilege granted to the party of the second part herein shall *extent* to said renewal *for* said continuance of the lease to the said Wheadon from the lessors and owners of the Rapides Hotel." (Italics ours.)

"Said renewal for continuance" does not make sense, and it is manifest that "or" was intended, and "for" was substituted through clerical error.

. The above-quoted sentence is intact in defendant's duplicate. A pen has been run through the words in plaintiff's duplicate. In both the word "extent," meaning "extend," appeared. In plaintiff's the spelling was corrected so as to read "extend." In defendant's duplicate the correction was not made.

Hence, according to plaintiff's version, we have the remarkable circumstance that he read said sentence, corrected the spelling of said word, and then erased the sentence by running his pen across the lines. And according to his testimony, he was guilty on the same occasion of the gross carelessness of not erasing the same important sentence in the duplicate delivered to the defendant.

On the other hand, it cannot be disputed that defendant understood that the privilege of renewal or continuance was included in the verbal agreement of the parties.

At a time not suspicious, he made a memorandum to that effect, which was given to his attorney, who testified that "a continuance of the lease" was included in his instructions.

The plaintiff caused his duplicate to be recorded on April 6, 1903. The reason of this registry is not explained. The defendant caused his duplicate to be recorded on April 9, 1903. On September 24, 1903, defendant gave plaintiff notice in writing that he would continue to occupy the premises by virtue of his privilege of renewal for five years commencing January 1, 1904, for the same price and on the same terms and conditions.

On December 4, 1903, plaintiff gave notice to defendant to vacate on January 1, 1904.

Counsel on both sides contend that circumstances support the testimony of their respective clients; but holding, as we do, that the burden of proof was on the plaintiff to show that the erasure was made before signing, we are of the opinion that he has failed to discharge that burden, and consequently that the duplicate produced by defendant must be taken as evidencing the contract between the parties.

It is idle to discuss the question of erasure from the standpoint of business probability, as plaintiff, to sustain his version of the transaction, was forced to admit a want of ordinary care and prudence in an important business arrangement.

It is argued finally that plaintiff had no right of renewal, and did not exercise any such right, and therefore the condition provided for in the disputed clause has not happened.

Plaintiff, it is true, had no contract right of renewal, and he testified that he "re-leased" the hotel for five years commencing January 1, 1904, and that the re-lease was not on the same terms and conditions and for the same price as the expired lease. What was the difference is not stated.

We think that the contract of the parties to this suit embraced not only a technical renewal of the lease, but any "continuance,"

and that the latter word was used advisedly by the attorney who drafted the contract.

Moreover, the written instrument recites that plaintiff had the privilege of renewal or continuance, and he is estopped to allege or assert the contrary.

Why the registry of plaintiff's duplicate contract of lease? Why this bitter contention over the erasure of the clause in question, if it conferred no valuable rights on the defendant?

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered and decreed that there be judgment in favor of the defendant, rejecting plaintiff's demands and dismissing his suit, with costs in both courts.