There is no bill of exceptions or assignment of error in the record to show upon what defendant relies for a reversal of the judgment.

The court has examined the record carefully, and does not find that any error has been committed to the prejudice of the defendant in the course of the trial.

Judgment appealed from is therefore affirmed.

———

(37 South. 600.)

No. 15,306.

MESSI et al. v. FRECHEDE.

(Nov. 21, 1904.)

ALTERATION OF INSTRUMENT — BURDEN OF PROOF—PETITORY ACTION—STALE DEMAND —CONVEYANCE PER AVERSIONEM.

1. The burden of proof rests upon a party relying upon a written instrument to account satisfactorily for any interlineation which operates a substantial change in the effect of such instrument.

2. One who has taken possession of the property of another without title and in bad faith is in no position to complain of the mere staleness of a demand for restitution.

3. Where land is not sold or conveyed at the rate of so much per measure, but "from boundary to boundary," and, from the language used, it appears to have been the intention to convey all the land within the boundaries given, the conveyance is per aversionem, and the grantee is entitled to recover all such land from a third person, whose asserted title, bad originally, has not been made good by prescription.

(Syllabus by the Court.)

Certiorari to Court of Appeal, First Circuit.

Action by Jules E. Messi and others against J. M. Frechede. Judgment for defendant, and plaintiffs appeal. Modified.

Lapeyre, Monroe & Breazeale and D. W. Breazeale, for applicant. Simcoe Walmsley, for respondent J. M. Frechede. Scarborough & Carver, for respondent John A. Barlow. White & Thornton, for respondent G. Del Corral.

## Statement.

MONROE, J. Petitioners brought suit in the district court for the parish of Natchitoches against J. M. Frechede for the recovery of 27 acres of land, more or less, in section 131, T. 9, R. 7, lying about the middle (of one side) of what has been known as the Messi Place, and bounded on three sides by that place, and on the fourth side by Cane river. They allege that they are the sole heirs of Gerome Messi, who owned the Messi Place (a plantation containing some 800 acres or more); that in 1874 Mrs. M. E. Payne and her husband, who owned the tract here claimed, verbally agreed to sell or barter the same to Gerome Messi in exchange for a mule, and that whilst the mule, valued at $100, was delivered, no deed to the land was executed, but that thereafter, to wit, on May 13, 1903, Mrs. Payne's husband and Gerome Messi having died in the meanwhile, and the legal title to said land having vested in said Mrs. Payne as the result of a partition between her and the heirs of her husband, she transferred said title to petitioners, who further allege that Frechede and his pretended author, Mrs. Elsie Breda, wife of J. Ernest Breda, and her pretended author, John A. Barlow, have been holding said land in bad faith, and should be condemned to surrender the same and account for the rents and revenues since 1897.

Frechede, for answer, alleges that he bought the tract in question from Mrs. Breda August 2, 1897, as part of the Messi Place; and Mrs. Breda, called in warranty, defends her title in general terms, and calls her vendor, John A. Barlow, in warranty. Barlow answers that he bought said tract

in 1889 from G. Del Corral, and that he and his vendees have been in possession in good faith since that time; and he pleads the prescription of ten years. He further alleges that said land "is covered by what is properly designated as Sec. 131, T. 9, R. 7, being part of the land originally granted to Bertrand Plaisance under the designation of private land claim B1,774, or private land claim of M. L. Davion, B2,128, located in part on Sec. 130, T. 9, R. 7"; and he avers that the title to the said tract has never been acquired by the plaintiffs from the original claimants, to whom those several sections were granted, and that said titles are to this day outstanding in said original parties and those holding under them"; and he pleads the same by way of defense, and calls his vendor, Del Corral, in warranty.

Del Corral denies, save as specially admitted, the allegations of the petitions filed by plaintiffs and by Barlow, and, further answering, alleges that on December 21, 1888, he executed a power of attorney, under private signature, to M. J. Cunningham, authorizing him to sell:

"(1) A certain tract of land or plantation situated on the right bank of Red river, about one mile above the town of Natchitoches, bounded above by lands formerly belonging to Bertrand Plaisance, north by lands formerly belonging to Judge Taylor, south by Bayou Isle aux Vaches, west by lands formerly belonging to Louis Tauzin and Judge Taylor, known as the Messi Place.

"(2) A piece of land about two miles above the town of Natchitoches bounded north and east by land of Gerome Messi, south by lands now or formerly belonging to S. M. Hyams and Louis Tauzin, and west by lands of Louis Tauzin. * * *"

That, purporting to act under said power of attorney, said Cunningham "on the 2nd day of September, 1901 [should be September 2, 1889], * * * undertook to sell to the defendant John A. Barlow the above-described property," but that, although the act of sale refers to the power of attorney and its registration as Cunningham's authority, the description of the property as given in the one varies from that as given in the other; and respondent denies that the property here claimed is included in that which his said agent was authorized to sell, and alleges that, if it is included in the sale, said agent exceeded his authority, to the knowledge of the vendee. He further answers that, if it should be held that the property here claimed is included in that described in said power of attorney, then that he purchased the same November 17, 1888, at a sale made by the sheriff in the suit of G. Del Corral v. John Waltz (No. 10,282 of the docket of the district court for the parish of Natchitoches), and that Waltz acquired it May 14, 1887, by purchase from Eugene Troisgros. This defendant further pleads the prescription of 10 and 30 years.

The judge of the district court, after hearing the evidence and the argument of counsel, reached the conclusion that the land in controversy had not been claimed by Gerome Messi, or those holding under him, and was not a part of the Messi Place at any time prior to the sale by Del Corral to Barlow; that it was not included in the land owned by Del Corral, or in that which Del Corral authorized Cunningham to sell for him; that its inclusion in the sale made by Cunningham, agent, to Barlow, was the result of the interlineation of the character and figures "& 131" (referring to sec. 131, T. 9, R. 7), and that said interlineation was not made with the knowledge or consent of either Cunningham or Del Corral; that Barlow had, therefore, acquired no title to said land, and was a possessor in bad faith, and that the defect in the title of those holding under him had not been cured by prescription; and he gave judgment for plaintiffs decreeing them to be the owners of the 27 acres claimed by them, and in favor of Frechede against Mrs. Breda, and of Mrs. Breda against Barlow, for the price paid by these parties, respectively; the claim of Barlow against Del Corral being rejected, and the

claims of the plaintiffs and of the defendant and warrantors, respectively, for rents and revenues, and for taxes paid and improvements, being dismissed as in case of nonsuit. From the judgment so rendered, Barlow alone originally appealed, and, the case having been heard in that tribunal, the Court of Appeal held that, whilst Barlow was a possessor in bad faith, the plaintiffs had failed to establish title to the whole of the land claimed by them, and gave judgment accordingly. Thereupon, as we understand the record, an application for rehearing was filed, pending which appeals were taken and perfected by the defendant Frechede and his warrantor, Mrs. Breda, and, upon the case presented by them, a second or supplemental judgment was rendered, differing from the first only in so far as was made necessary by their changed positions; the court deciding as to all parties "that plaintiffs in this suit are the owners of about five acres of land in sec. 131, T. 9, R. 7, on the right bank of Cane river, descending, bounded above, below, and in the rear by lands formerly belonging to Gerome Messi," ordering "that they be put in possession of the same," and otherwise regulating the rights of the parties upon the basis established by the judgment appealed from.

The plaintiffs pray that these judgments be now reviewed and dismissed upon grounds stated by them as follows:

"(1) That the judgments of the Court of Appeal herein rendered are not judgments either in fact or in law. They cannot be executed.

"(2) That said court has based its decisions on an impossible state of facts, under the pleadings, the evidence, and the findings of the lower court, as well as its own.

"(3) That said judgments are based on a proposition of law clearly overriding our Civil Code articles and the well-settled jurisprudence of this state concerning sales per aversionem and sales ad mensuram."

### Opinion.

From the record which has been sent up to this court, it appears that the Messi Place in 1866 consisted of several tracts of land on Cane river (otherwise called Red river and Little river), lying contiguous to each other, save as will be hereafter noted, and extending for about four miles east and northeast along the right (descending) bank of that stream from a point about one mile northeast of the town of Natchitoches. Upon October 23, 1866, Gerome Messi, the owner of the property, mortgaged it to A. Miltenberger, describing it as follows, to wit:

"(1) A certain tract of land, or plantation, situate about one mile above the town of Natchitoches, on the right bank of Red river; bounded, above, by lands now, or formerly, belonging to Bertrand Plaisance; North, by lands now, or formerly, belonging to Judge Taylor; South, by Bayou Isle aux Vaches; west, by lands now or formerly, belonging to Louis Tauzin and Judge Taylor.

"(2) A piece of land containing twenty-five arpents about two miles above the town of Natchitoches; bounded, North and East by lands of said Messi; South, by lands now, or formerly, belonging to S. M. Hyams and Louis Tauzin and West by lands of Louis Tauzin [which two tracts were acquired by Messi from C. L. Walmsley July 10, 1860, as containing about 175 acres].

"(3) The old courthouse on St. Dennis street, in the town of Natchitoches, with the lot on which it stands," etc.

"(4) A certain tract of land about two miles above the town of Natchitoches, at a place called Isle aux Vaches, the right bank of Red River, descending; containing about 600 acres, more or less [acquired from the estate of Jas. Taylor, deceased, August, 1850].

"(5) The two undivided fifths of a tract of land on Lac a Poisson, near the town of Natchitoches, containing about 450.36 acres. [This tract, it may be remarked, does not lie with the others, and did not, therefore, form part of the Messi Place.]"

In January, 1881, the property thus described was sold by order of the Circuit Court of the United States in satisfaction of the mortgage mentioned, and was adjudicated, as described, to F. R. Couronneau. In January, 1887, Couronneau executed a deed in which tracts 1, 2, and 3, as above described, are conveyed to E. Troisgros, but there is no specific reference to the two tracts, 4 and 5, last above mentioned; and in May, 1887, Troisgros sold to John Waltz by the description agreeably to which he had acquired from Couronneau.

In November and December, 1888, G. Del Corral became the adjudicatee of said property according to the following description, to wit:

"1st. A certain tract of land, or plantation, situate in the parish of Natchitoches, in this State, on the right bank of Cane river, descending, about one mile above the city of Natchitoches; bounded, above, by lands now, or formerly, belonging to Bertrand Plaisance; north, by lands now, or formerly, belonging to Judge Taylor; South by Bayou Isle aux Vaches; West, by land now, or formerly of Louis Tauzin and Judge Taylor, and known as the Messi Place.

"2nd. A tract of land about two miles above the city of Natchitoches; bounded, North, and East, by lands of Gerome Messi; South, by lands now, or formerly, of S. M. Hyams and Louis Tauzin, and West, by lands of Louis Tauzin, together with all the buildings and improvements on said tracts which contain, in aggregate, 881$^{53}/_{100}$ acres.

"3rd. A lot of ground situated in the city of Natchitoches; bounded, South, by St. Dennis street," etc.

In December, 1888, Del Corral executed a power of attorney to M. J. Cunningham, authorizing him to sell:

"(1) A tract of land or plantation situated on the right bank of the Red river at about one mile above the town of Natchitoches; bounded, above, by lands formerly belonging to Bertrand Plaisance; North, by lands formerly belonging to Judge Taylor; South, by Bayou Isle aux Vaches; West, by land formerly belonging to Louis Tauzin and Judge Taylor and known as the Messi Place.

"(2) A piece of land about two miles above the town of Natchitoches; bounded, North and East by the lands of Gerome Messi; South by land now, or formerly belonging to S. M. Hyams and Louis Tauzin, and West by lands of Louis Tauzin.

"(3) A lot of ground situated on St. Dennis street in the said town of Natchitoches," etc.

And acting under the authority so conferred, Cunningham on September 2, 1889, sold to John A. Barlow property which the latter—who acted for himself in the matter of preparing the deed—described as follows, to wit:

"A certain tract of land, or plantation, situated in the parish of Natchitoches on the right bank of Cane river, descending, containing, in aggregate, 881.53 acres, together with all the buildings and improvements thereon—said plantation being composed of the following tracts of land:

"1st. A tract of land situated about 3 miles above the town of Natchitoches, being Section 23, T. 9, R. 7, containing 639.63 acres:

"2nd. Another tract, adjoining and just below that described, being Sec. 130, $\underset{\wedge}{\&\ 131}$ T. 9, [Mem. Interlineation as in original deed.]

"3rd. Another tract, adjoining and just below that second described, being lots 1, 2, 3, & 4 of Sec. 17, T. 9, R. 7—and another tract lying West of the 1st and 3rd described tracts—being the eastern portion of Sec. 16 of said T. 9, R. 7—the whole containing in aggregate, 881.53 acres, as above stated, and being the same property which was acquired by Gabriel Del Corral on the 15th day of December, 1888, at a sale made by the sheriff of the parish of Natchitoches in the suit No. 10282 D. C. of this parish entitled Gabriel Del Corral vs John Waltz," etc.

The characters "& 131," which refer to the land here claimed, are interlined in the foregoing description; and an attempt is made at the end of the act to cure the defect by a further interlineation, written in a cramped handwriting between the signatures of the attesting witnesses and the seal, on the left, and the signature of the parties to the act, on the right, thus:

> "The word's & 131
> interlined & approved
> before signing."

These interlineations, it is conceded, were made by Barlow, the vendee, who testifies that they were made before the act was signed. But the vendor, Mr. Cunningham, is rather positive that they were not so made, and disclaims all knowledge of them; and he called the attention of the district court to the significant fact that the vendee, desiring to borrow money upon the property purchased by him, prepared for the proposed lenders, about the time the act of sale was executed, an abstract of title, in which there was no suggestion that section 131 ever formed part of the Messi Place, or was included in the lands which Cunningham was authorized to sell, and which were sold by him, from which it appears still more probable that the interlineations were the result of an afterthought.

Other circumstances, to which we consider it unnecessary more particularly to advert,

tend rather to augment than to allay the suspicion thus excited; and we are of opinion that the district and circuit courts, in holding that Barlow entered upon the land here claimed as a possessor in bad faith, correctly interpreted the facts and correctly applied the principle of law as thus stated by this court in the syllabus of a recent case, to wit:

"(1) Erasures and interlineations in the substantial part of an instrument are presumed to be false or forged, and must be satisfactorily accounted for before the instrument can be received in evidence. This is the civil-law doctrine. McMicken v. Beauchamp, 2 La. 290; Pipes v. Hardesty, 9 La. Ann. 152, 61 Am. Dec. 202.

"(2) The English rule, adopted in some of the states, seems to be different; but, when the circumstances are suspicious, the burden of removing the suspicion is upon the party seeking to use the instrument."

Wheadon v. Turregano, 112 La. 931, 36 South. 808.

Reverting to the question of the title exhibited by the plaintiffs, we find that in 1855 there was inventoried in the Succession of Bertrand Plaisance, as his separate property, a "certain tract * * * about two miles above the town of Natchitoches, on both sides of Red River, containing one hundred & two acres, more or less * * * bounded, above, on the East bank, by lands belonging to Ambroise Sompayrac and below by land belonging to Mdme Honoré Fredieu; and above, on the West bank, by land of Gerome Messi and below by land formerly belonging to Samuel M. Hyams," and the indentification of so much of the tract thus described as lies upon the west (or right, descending) bank, with fractional section 131, with private land claim B1,774, and with the land here claimed, is, we think, sufficiently established. Bertrand Plaisance died, leaving the usufruct of the property to his wife, in whose succession, a few years later, it was inventoried as "a certain tract * * * on the left and right [the words "and right" being interlined] banks of Little River, descending, and being bounded above, on the left bank, by lands of A. Sompayrac and below, by lands of Marie Emilie Derbonne, wife of J. B. Vandergriff; in the rear, by lands of A. Leconte & others; in front, by said river; containing 80 acres, more or less—and being the separate property of her husband Bertrand Plaisance of which she had the usufruct by his last will —and being bounded on the right bank, descending; above, by lands of Gerome Messi; below, by lands of Charles Diggs; in the rear by lands of Gerome Messi; and in front, by said river," etc. Messi, it may be here stated, subsequently acquired from C. L. Walmsley the land owned by Diggs, and the Messi Place thereafter (from July 10, 1860) extended up and down the river, above, below, and in the rear of the tract in question, the exact dimensions of which no one appears to have taken the trouble to ascertain. It may also be here remarked that, from the language above quoted from the inventory in the Succession of Mme. Gaillet (Widow Plaisance), it seems likely that the estimate of the acreage was intended to apply to the land lying upon the left bank of the river, and that the part lying upon the right bank was at first overlooked, and that the error so made was repeated and varied in subsequent sales. Thus in 1858, after the death of Mme. Plaisance, the entire tract was sold by the description last above given to Isaac Plaisance, and after his death it was sold as "containing, on the left bank, descending, 75 acres, more or less, and on the right bank about 5 acres," to John Payne, who died in 1878, leaving it, with other property, to his daughter-in-law, Mary Eliza Payne and his grandchildren, the wife and children of his son William Payne. By partition effected in 1884, Mrs. Payne became the sole owner of the particular tract in question, and in 1901 she conveyed that portion of it lying on the right bank of the river to the plaintiffs by a deed containing the following recitals, to wit:

"My deceased husband, William Payne and myself entered into a verbal contract of sale with Gerome Messi, now deceased, by which we agreed and obligated ourselves to sell, transfer and deliver unto the said Gerome Messi, for a valid consideration, to wit, one certain mule, valued at that time at $100, which consideration was duly paid by the said Gerome Messi at the time that the verbal contract was entered into, that certain piece of land situated in the parish of Natchitoches; La., on the right bank of Cane River (formerly Red River), descending, bounded, above, below and in the rear by lands formerly belonging to Gerome Messi and known as the Messi Plantation, and in front by Cane River (formerly Red River) containing five acres, more or less. A formal deed * * * was never passed, owing to the neglect of all the parties, and, recognizing the fact that * * * the heirs of the said Messi are justly and legally entitled to a formal deed * * * I have this day and do, by these presents, bargain, sell * * * and quitclaim unto the heirs of said Gerome Messi, deceased, to wit: * * * all my right, title and interest in and to the above-described tract of land. No survey has ever been made of the piece of land, the acreage is not exactly known, but whatever the acreage may be, I hereby transfer all of said tract of land to the said heirs."

The fact that the property was not sold or conveyed at the rate of so much per measure, but "from boundary to boundary," taken in connection with the concluding language of the foregoing excerpt, seems to leave no room for doubt that the conveyance was per aversionem, and was intended to include all the land within the boundaries given. Civ. Code, 2494, 2495.

It is said on behalf of the defendant Barlow that plaintiffs' demand should be rejected as stale. But a person who has taken possession of the property of another in bad faith, without title, is in no position to set up such a defense, and the possession of the other defendants is too recent to afford any basis therefor. It is also suggested that this court should hold that the tract here claimed passed with the sale of the Messi Place under the proceedings in the United States court. We are unable, however, to discover any sufficient reason for so holding, since the sale referred to was made in satisfaction of a mortgage given by Gerome Messi, which did not include said tract, and could not have done so, since he was not the owner of it when the mortgage was given. Our conclusion, then, is that the judgment rendered by the district court was correct.

It is therefore ordered, adjudged, and decreed that the judgments herein rendered by the Court of Appeal be reversed in so far as they reverse or modify the judgment of the district court, and that said judgment last mentioned be affirmed at the cost of the appellants.

It is further ordered that said appellants pay the costs of this proceeding.