### No. 9093
### Orleans

---

### ROZELL McWILLIAMS, Appellant, v. JOHN W. MATHES

---

(November 16, 1925, Opinion and Decree.)

*(Syllabus by the Court.)*

1.  **Louisiana Digest—Evidence—Par. 215.**
Verbal testimony is inadmissible to vary the plain unambiguous terms of a written contract in the execution of which there has arisen no error or fraud.

2.  **Louisiana Digest—Mandate—Par. 74.**
Apparent authority in a solicitor to secure a contract of agency for his principal does not carry implication of like authority to entirely abrogate the contract, without consent of the principal.

3.  **Louisiana Digest—Evidence—Par. 40.**
Evidence peculiarly available to a litigant and tending to establish a preponderance of evidence in his favor will be presumed unfavorable when not offered.

Appeal from Civil District Court. Parish of Orleans, Div. "F", Hon. Percy Saint, Judge.

This is a suit for commission alleged due under a written contract for the sale of real estate. There was judgment for defendant and plaintiff appealed.

Judgment reversed.

F. Rivers Richardson, of New Orleans, attorney for plaintiff, appellant.

Milling, Godchaux, Saal and Milling, of New Orleans, attorneys for defendant, appellee.

### OPINION

BELL, J.   Plaintiff, a real estate agent doing business in the City of New Orleans, sues defendant for $288.00, which he claims is due him for commissions under a written contract dated April 12, 1918, the material provisions of which read as follows:

"April 12, 1918.

"I hereby appoint R. McWilliams * * * my agent * * * to sell my property * * * more fully described on the reverse side of this card * * * I give my agent sole control of same from date until revoked by thirty days' written notice of withdrawal and I also oblige myself not to allow other agents to offer this property for sale or to post signs thereon, and further agree not to interfere in the sale of the property during the term of the contract. I also bind myself to refer all applicants for the purchase of said property to my agent * * *. When this property is sold I agree and bind myself to pay my agent a commission of 3 per cent no matter by whom the property has been sold. * * * In case of suit to recover my part of the commission due, 25 per cent will be added for attorney's fees.

"(Signed) Jno. W. Mathes.
"Accepted (Signed) R. McWilliams."

Plaintiff annexes the original contract, makes it part of his petition, and alleges that no written withdrawal of the property from plaintiff's hands was ever made by defendant, but that while the contract was in full force, and after plaintiff had accepted and acted upon same defendant sold the property for $9600.00; and hence became indebted to plaintiff for commission to the

amount claimed. It was further alleged that while plaintiff's employment was in full effect, defendant illegally obtained possession of the written contract, and endeavoring to defeat plaintiff's rights to commissions, changed and altered the contract, without plaintiff's consent, so as to make it appear that the employment was only for a period of sixty days. Amicable demand without avail is averred, and prayer for recovery of attorney's fees, as well as commissions, is made.

Defendant answers by averring that if the document sued upon was signed by him, it was signed under a misapprehension of its conditions, and absolutely contrary to the specific agreement had with plaintiff, which was that the property was to be in the hands of plaintiff only for thirty days. Defendant admits that no written withdrawal of the contract was made, and avers that none was necessary; he admits the sale for the price mentioned, but denies that it occurred while the agreement with plaintiff was in force, and that in fact, it was made after plaintiff's contract had terminated. As a special defense, defendant finally avers that all of his negotiations concerning the contract were with a young lady, representing the plaintiff, and that he never had any agreement with plaintiff personally; that long after he had agreed with this agent or employee of the plaintiff, another real estate agent negotiated with defendant for the sale of the same property, and that this fact, in some way, became known to plaintiff, who phoned defendant that this other agent should be referred to plaintiff's office; that this demand was a surprise to defendant, for the reason that the time limit for which the property had been placed in plaintiff's hands had elapsed; that thereupon he phoned the young lady with whom the negotiations had been had, and told her there must have been some mistake; that she

then brought to defendant's office the original contract which he had signed, admitted to the defendant that the document did not correctly set forth the terms of the agreement, and that she then and there voluntarily interlined and changed the document, so as to make it accord with the original agreement.

In his written reasons for judgment rendered in favor of defendant, our learned brother of the District Court predicated his decision upon the following findings of fact:

"Plaintiff's agent admitted that there was a mistake, and immediately changed the contract in accordance with the understanding of both herself and the other party to the contract."

Our careful consideration of the record leads us to the belief that the judge *a quo* was manifestly in error as to the above finding. In no part of the evidence have we been able to find that the plaintiff's employee admitted that a mistake had been made by her or the defendant in drawing the original agreement. Nor does the defendant so testify. In response to instructions given him by the trial judge to state what was the intention of himself and of the employee which led up to the execution of the original contract, he testifies:

"Mrs. Woodward came to me and asked for an option of thirty days, and I told her the property was in the hands of the other real estate agent, and I did not feel that I wanted to tie it up for any more than thirty days, and this contract was then signed—the first option. Later I found out that this contract was not according to her agreement with me, and she came to me, at my office, and suggested this change; she told me 'scratch this line and put sixty days and that will straighten the matter up'."

Counsel for defendant, while cross-examining the solicitor, propounded to her not once, but on four different occasions, the following questions:

"Well, did the contract as it was signed originally, or as it was changed, correctly set forth your agreement with Mr. Mathes?"

This witness finally answers the question by saying "That is for Mr. Williams", and, further answering the same question, she says:

"Of course, I was new at the business and did not know that I had the authority to change that contract, which, of course, I should not have done * * *. O yes, I think he thoroughly understood the agreement. I thought he did, I am sure.
"Q.  Why did you let him change it?
"A.  Well, because I did not know.
"Q.  Well, you said you did not have the authority to let him change it, but did you not let him change it because your original understanding had been that the contract was to be for sixty days?
"A.  No, I only let him change it because I was anxious to get the contract, and I thought I was doing right in letting him change it.
"Q.  You let him change it because you wanted to get the contract?
"A.  After he suggested the change.  I did not suggest the change."

There is no dispute that when the lady, at defendant's request, called upon him at his office on June 20, 1918, and brought with her the original contract, defendant, with his own pen, changed one of the clauses in the contract originally reading:

. "I give my agent sole control of same from date until revoked by thirty days' written notice of withdrawal."

so as to make it read, after certain interlineations and erasures, as follows:.

"I give my agent sole control of same from date for 60 days' written notice of withdrawal."

A reading of the clause as altered conveys to the mind no intelligent meaning, but if defendant intended by such alterations made on June 20, 1918, to have it appear that the contract had expired under a sixty-day limitation, he deceived no one but himself, for the reason that more than sixty days had already run from the unaltered, original date of the contract, towit, April 12, 1918.  As already noted, defendant states in his testimony that he did not wish to tie up his property for more than thirty days; that he so notified the solicitor, and that in this respect, the contract, before its alteration, did not express the true agreement between himself and the plaintiff's solicitor.  Taking him at his word, we are still at a loss to conceive how the alterations made by him remedied the situation.  The only logical conclusion which must be drawn from all the facts and surrounding circumstances of this case is that defendant's sole motive in requesting the solicitor to return to his office with the card was to secure, if possible, an alteration of the contract so as to either entirely nullify the original document or so qualify it as to relieve him of any obligation to pay plaintiff any commissions.  It should be noted that this change was effected on the very same day upon which an agreement to sell the property was made to parties which defendant failed to refer to plaintiff's office.  There is uncontradicted evidence in the record to the effect that upon the same day as that upon which defendant made the useless alterations, the solicitor, after calling on defendant, wrote on the marginal face of the contract the following:

"June 20 exclusive contract expired other agents have it—but will pay us commission if sold."

The above notation is, in fact, the material manner in which the contract was really altered, and its effect was to change the original document so as to entirely deprive plaintiff of the exclusive agency given him,

as against the world, for the sale of defendant's property.

The conversation between plaintiff's solicitor and defendant concerning just why he desired the contract to be altered or qualified, and in which respect he considered the contract at variance with the original agreement, appears to have occurred in the presence of a third party, defendant's stenographer. Considering the contradictory testimony of the solicitor as against that of defendant, concerning what was said and done at this conference, we are led to believe that this third party should have been called as a witness for the defense in corroboration of his testimony. No· explanation appears in the record as to why such evidence was not offered. The presumption arising under these conditions is unfavorable to defendant. Succession of Mrs. Emile Kantz, 7210 Orl. App.

The only real surprise which defendant could possibly have had, occurred immediately before the alterations of the contract, when he found out that plaintiff had learned of, and therefore had promptly put him in default, for violating a vital clause of the contract, which reads as follows:

"I also bind myself to refer all applicants for the purchase of said property to my agent."

It is contended by counsel for defendant that by the same token which led defendant to believe that plaintiff's solicitor had full authority to make the contract, there was like justification on defendant's part in concluding that the same ·solicitor had full authority to alter or qualify the contract, when it did not express the real intent of the parties thereto. The trial judge seems to have approved of this contention, but such a principle of law, in our opinion, has no application to the instant case. It

is impossible to conclude from the plain language of the marginal alterations above referred to, that same·were intended to correct the mistake contended by defendant. There is no ambiguity in the words used. They clearly indicate that the solicitor, as well as the defendant, understood the original agreement to have been "an exclusive contract", and that by the additional use of the word "expired", both the solicitor and defendant, without consulting plaintiff, intended to entirely abrogate the exclusive contract. Surely no such authority could be imputed to the plaintiff's solicitor.

We find no ambiguities whatever in the original contract sued upon. In its language, it is as plain as a pikestaff; in its effect, it is as binding as a straight-jacket. There was error in admitting verbal testimony to change or alter the document.

The defendant, by his special defense to this suit, assumed, but failed to carry, the burden of proof toward accounting satisfactorily for the interlineations found in the document, and which cause substantial changes affecting the instrument. Pipes vs. Hardesty, 9 La. Ann. 152; Wheadon vs. Turregano, 112 La. 931, 36 South. 808; Messi vs. Frechede, 113 La. 679, 37 South. 909.

We are of the opinion that the judgment is erroneous and that plaintiff should recover.

It is therefore ordered that the judgment appealed from be reversed and set aside, and it is now ordered, adjudged and decreed that there be judgment for plaintiff, Rozell McWilliams, and against defendant John W. Mathes, in the sum of Two Hundred and Eighty-eight Dollars ($288.00), with legal interest from judicial demand until paid; and for an additional sum of Seventy-two Dollars ($72.00) as attorney's fees.