## HARZ v. PAN AMERICAN FURNITURE FACTORY, Inc.
### No. 14300.

Court of Appeal of Louisiana. Orleans.
May 22, 1933.

H. L. Hammett, of New Orleans, for appellant.

Lemle, Moreno & Lemle, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit under a contract of lease for $1,080 with 8 per cent. interest and 10 per cent. attorneys' fees. The plaintiff, Joseph Harz, is the owner of the property numbered 2116-18-20-22 Clio street. The defendant, Pan American Furniture Company, Inc., was a tenant in the building in 1928 under two separate contracts of lease which were consolidated upon the renewal of the lease in October, 1928. The latter contract is the one with which we are concerned and ran for a period of one year expiring September 30, 1929. The lease which was executed in duplicate on 'a printed form originally contained an automatic renewal clause reading as follows:

"The lessee agree that, unless on or before the first day of July 1929 shall notify the lessor in writing that he intend to vacate the premises hereby leased at the expiration of the time above specified, then this lease shall, at the option and election of the lessor be considered as renewed and extended for another year from and after the expiration of the time above specified and the lessee hereby make the same agreement with respect to each and every year during which this lease shall continue in force."

This clause in both copies has been scratched out in ink, although somewhat differently, so that if the alteration be effective the clause is inoperative. The issue in the case is, therefore, whether the automatic extension clause is operative or not, for if it is operative the amount claimed by plaintiff is conceded to be

due and, otherwise, it is admitted the suit must fail.

The lease covering the entire property, first executed in 1928, was renewed in 1929 by an indorsement on the reverse of the printed form to that effect, but in 1930 when it again expired, nothing having been heard from defendant, Harz wrote a letter under date of August 13, 1930, in which the claim was made that the silence of the defendant amounted to a renewal of the lease, and he inclosed a new lease with twelve rent notes for the signature of the defendant. The defendant declined to execute the lease and called attention to the fact that the automatic renewal clause had been stricken out and subsequently, when the lease expired, moved out of the premises, whereupon this suit was filed.

The position of the plaintiff is that under our law erasures or interlineations in a substantial part of a written instrument are presumed to be false or forgeries. McMicken v. Beauchamp, 2 La. 290; Wheadon v. Turregano, 112 La. 931, 36 So. 808. On the other hand, defendant contends that whatever presumption the law raises concerning alterations have been overcome by the particular facts of this case.

A. Jacobs, president of the defendant company, testified that the inking out of the clause was done in the presence of Harz when the first contract for the entire building was executed in October, 1928. He is corroborated by his secretary, Miss Lassus, who stated that she read the lease at the time it was executed and the interlineations and erasures were there at that time. When Mr. Harz was asked whether the marks were not there at the time the lease was signed in October, 1928, he answered that he was "sick at the time the lease came back, and later when we took it out and looked at it we found it peculiar, that that should be a cancellation; I didn't expect it to be a cancellation." When asked what he did think it amounted to, he replied he "thought someone had scribbled for pastime on there, someone dilly-dallied with it,—an office boy or someone had put spots on it." Therefore, some time later than October, 1928, when the plaintiff was ill he discovered the attempt to cancel the renewal clause. We interpret this statement to mean that shortly after his recovery Mr. Harz observed the erasures in the contract of lease. That, however, was in 1928 and the lease remained in his possession in that condition until 1929 when it was taken out and a renewal indorsed on its reverse side, and until 1930 when defendant refused to renew the lease, so that Harz' copy of the lease containing the erasures was in his possession for something like two years before any complaint was made. This circumstance, we believe, greatly weakens plaintiff's testimony to the effect

that he would not have renewed the lease with the cancellation of the renewal clause, and inclines us to accept the version of defendant to the effect that the clause was stricken out by mutual consent because, we cannot reconcile the statement of Mr. Harz that he knew of these erasures and was content to let it go at that, believing that "someone dilly-dallied with it,—an office boy or someone had put spots on it" or that some one scribbled for pastime over an important clause in the lease.

We are fortified in this view by other statements of Harz to the effect that he and Mr. Jacobs argued about the renewal clause and when asked what Mr. Jacobs argued about answered "you see what is done; the clause is obliterated in the lease." Furthermore, if Harz believed that the renewal clause was still effective and that under it he had the sole right to insist on a renewal, why did he consider it necessary to have a formal indorsement to the effect that the renewal was by mutual consent? This was evidently the view of the trial court and we are of opinion that it was correct.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.