’
 
 SIMON; Justice.
 

 Plaintiff, Wiley McMahon, brings this suit against his insurer, Manufacturers Casualty Insurance Company, to recover damages in the sum of $2,564 as a result o.f the total loss of his car on May 29, 1953.
 

 It appears that under the policy of insurance issued to plaintiff by defendant, plaintiff is entitled to recover the actual amount of 'damages sustained in a wreck or collision, less the deductible sum of $50. Due notice of loss was given the defendant within the sixty-day period called for by the policy; and plaintiff alleges that despite repeated amicable demands for settlement defendant has arbitrarily, capriciously and without proper cause refused to pay the amount due under the policy; that as a result thereof he is entitled to a statutory penalty of' 12% of the amount recovered, plus attorney’s fees of $1000, with legal interest from date of judicial demand.
 

 In its answer defendant admits the existence of the policy and the occurrence of the collision in which plaintiff’s car was damaged. It denies total damage to the car and alleges that it could have been repaired in a satisfactory manner and restored to its original condition for an amount less than that demanded. At the outset of the trial, defendant formally tendered to plaintiff the sum of $1,392.86 in full settlement of his claim, which was rejected.
 

 After a trial on the merits, but prior to judgment, defendant interposed and filed an exception of no cause or right of action, which was overruled. The district court, without favoring us with written reasons, rendered judgment in favor of the plaintiff for the sum of $2,050, with legal interest as prayed for. It further condemned defendant to pay statutory penalties equal to 12% of the principal amount awarded and attorney’s fees of $600. It further ordered that “plaintiff retain the salvage value’’ of' the automobile.
 

 From this judgment the defendant has perfected a suspensive appeal. Plaintiff answered, praying that the judgment be amended to increase the principal amount awarded to $2,450, and in all other respects affirmed.
 

 Under its exception of no right or cause of action, defendant contends that the Rapides Bank & Trust Company is a neces-' sary and indispensable party to this suit on the ground that the policy issued in favor
 
 *782
 
 of plaintiff contains a loss payable 'clause, the pertinent part of which reads: “Loss or damage, if any, under the policy shall be payable as interest may appear to Assured and Rapides Bank & Trust Company * * It is shown that the Rapides Bank & Trust Company, as mortgagee, had a payable interest at the time of the accident in the amount of $1,751, represented by an encumbrance on plaintiff’s automobile, payable out of any settlement made in favor of plaintiff as a result of any loss.
 

 We have had several occasions to interpret and apply the effect of a loss payable clause as is here presented. In the case of Officer v. American Eagle Fire & Insurance Company, 175 La. 581, 143 So. 500, 501, in reviewing the legal effect of such a clause, we said:
 

 “This policy throughout shows that it was intended to evidence a contract between the insurer and the assured, and not one between the insurer and the mortgagee. The mortgagee was not intended to be and was not made a party to it. He was designated as the payee of a part but not all the proceeds thereof in case of loss or damage. The insurance was made payable to him
 
 only as his interest might appear.
 
 His interest in the policy was not commensurate with the amount of the insurance which exceeded by far the amount originally due him. * * *
 

 “This policy was in no sense a contract between the insurer and the mortgagee. • The assured owned the property covered and controlled it. He consented that in case of loss or damage to his property by fire a portion of the proceeds of the policy should be paid by the insurer to the mortgagee, as his interest might appear. This provision in the policy did not- constitute the mortgagee ‘virtually the assured,’ as was held by the Court of Appeal. .
 

 “The clause in this policy making the proceeds, if any, payable to the mortgagee, as his interest might appear, is what is generally referred to as an ordinary or open mortgage payable clause, under which the assured mortgagor remains the responsible party, or party in interest, to control the insurance and the adjustment of the loss.
 
 Under policies containing such a clause, the contract remains one exclusively between the insurer and the property owner. The mortgagee is only a conditional appointee of the mortgagor to receive part of the proceeds in case of loss. As such conditional appointee, the mortgagee was entitled to receive so much of any sum that might become due under the policy as did not exceed his interest as mortgagee, and no more,”
 
 (All italics ours.)
 

 In the case of Brooks v. Liverpool & London & Globe Ins. Co., 144 So. 788, 789, the Court of Appeal in applying the doctrine announced by us in the Officer case, supra, and after quoting at length therefrom, said:
 

 “ * * * This loss payable clause did not change the contract as between the in
 
 *784
 
 surance company and the insured. Under policies containing such a clause, the contract remains one exclusively between the insurer and the property owner, and therefore
 
 the property owner is the proper party to institute suit under said policies.
 
 * * * ” (Italics ours.)
 

 In the case of In re
 
 Clover
 
 Ridge Planting & Mfg. Co., 178 La. 302, 151 So. 212, 223, this Court, in citing with approval the decisions reached in the Officer case, supra, said:
 

 “This holding is in exact accord with the jurisprudence of other states, as shown by the cases there cited and the following additional authorities:
 

 “In Walker v. Queen Ins. Co., 136 S.C. 144, 134 S.E. 263, 270, 52 A.L.R. 259, the court said:
 

 “ ‘It is universally held that the open mortgage clause does not create a new and independent contract between the insurance company and the mortgagee; that the original contract between the company and the insured remains.’
 

 “In Van Buren v. [St. Joseph County Village] Fire Ins. Co., 28 Mich. 398, the court said:
 

 " ‘But this policy creates no contract relation between the insurance company and the mortgagee. It is a contract only between the company and the plaintiff.’
 

 “In Cooley’s Briefs on Insurance, vol. 3, page 2383, it is said:
 

 “ ‘If the policy contains merely the ordinary loss payable clause, the mortgagee is merely
 
 cm appointee to receive payment in case of loss and has no direct rights against the insurer, hut recovers solely on the right of his mortgagor,
 
 and is therefore affected by a forfeiture, the same as the mortgagor. * * *
 

 “ ‘The theory of the rule is, as shown in the leading case of Grosvenor v. Atlantic Fire Ins. Co., 17 N.Y. 391, that the policy is the contract of the mortgagor and an insurance of his interest, the mortgagee being merely an appointee to receive the money in case of loss.
 
 The contract as to him is collateral to the principal undertaking to pay the mortgagor! ”
 
 (All italics ours.)
 

 See, also, Eicher-Woodland Co. v. Buffalo Ins. Co. of New York, 198 La. 38, 3 So.2d 268.
 

 We, therefore, conclude that the exception of no right and no cause of action was properly overruled.
 

 The main issue presented for our determination is the extent and measure of damages suffered by plaintiff as the result of the accident. The record discloses that on March 15, 1953, plaintiff purchased a new 1953 Kaiser automobile for the price of $2,845.61; that on May 29, 1953, the car was involved in an accident and extensively damaged. The extent of the damages suffered by plaintiff is so clearly manifested by the oral, photographic and documentary proof contained in the record that
 
 *786
 
 we deem it burdensome to extend the length of this opinion by a detailed analysis of the evidence presented. There is neither convincing nor satisfactory proof which would warrant us to hold that plaintiff’s car could or would have been repaired by replacement of broken or damaged parts or by its complete restoration to its former state — that is, to its condition as before the injury. The trial judge, who saw and heard the witnesses and analyzed all of the evidence adduced — purely matters of fact — concluded that the car was as a result of said accident, a total loss and not subject to be restored to its former condition.
 

 We have consistently recognized the principle that findings of faGt reached by a trial judge should not be reversed unless his conclusions are manifestly erroneous. Authorities in support of this doctrine are too numerous to indulge in citation.
 

 Having concluded that the damages complained of resulted in a total loss of plaintiff’s automobile, the next question posed is that of determining the cash value of the car as of the date of the accident. As previously observed, its purchase price was $2,845.61. Having purchased it from the Doggett Motor Company of Alexandria on March 15, 1953, plaintiff had owned it about ten weeks and had driven it approximately 4,375 miles. We are impressed with the testimony of Mr. Kenneth Doggett, the local Kaiser dealer, who testified that the actual cash value of the car on that date was approximately $2,695, basing his estimate upon a depreciation at the rate of
 
 5‡
 
 per mile.
 

 It is difficult to recognize or accept any fixed rule in determining an exact value of an automobile, whether totally or partially damaged; nor can any Bluebook Guide, fixing in a general sense respective valuations of automobiles, be adopted by us. We are, therefore, compelled to resort to given and existing circumstances in relation to its age and prior us.e in fixing a valuation.
 

 Other than the 5f!-per-mile depreciation testified to by Mr. Doggett, we feel that the life expectancy .of an automobile purchased new and subjected to ordinary use is that of four years and consider it to be an appropriate and reasonable method to be adopted by us in this instance.
 

 In the case of Stone v. Commercial Fire & Casualty Co., 50 So.2d 327, 330, the Court of Appeal for the First Circuit, in arriving at a cash value of a 4-month-old Packard at the time of the accident in which it was damaged, using the cost of $2,900 as a basis, said:
 

 “ * * * Using that as a basis, we find that the life of the car was four years and therefore had a depreciation of $725.00 for the first year, and since the car was four months old at the time of the accident we figure that it had then depreciated in the amount of $241.66. Deducting this
 
 *788
 
 depreciation from the cost we find that the car had a value of $2658.34 at the time of the accident. * * * ”
 

 In the case at bar, using the cost of $2,845.61 as a basis, and granting that plaintiff’s car has a life expectancy of four years, we find that it would depreciate $711.40 at the end of the first year; and in view of the fact that it was ten weeks old at the time of the accident, it had depreciated in the sum of $148.15 and had a cash value at that time of $2,697.46. This, we feel, is a just 'and reasonable computation.
 

 However, plaintiff’s prayer on this appeal is for damages in the sum of $2,500 less the $50 deductible under the policy upon which he sues, or the sum of $2,450; and we cannot award a sum greater than that demanded by him.
 

 The remaining issue to be determined is whether under the facts plaintiff is entitled to statutory penalties and to attorney’s fees.
 

 LSA-R.S. 22:658 provides that the insurer shall pay claims within sixty days after receipt of proof of loss, and failure to do so after demand therefor, when such failure is found to be arbitrary, capricious or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, together with all reasonable attorney’s fees for the prosecution and collection of such lo'ss.
 

 The evidence as a whole convinces us that prior to the filing of this suit, during the period from the date of the accident to October 26, 1953, there were considerable negotiations between the plaintiff and defendant’s agent. These negotiations involved an attempt on the part of both plaintiff and defendant to arrive at some measure of damages satisfactory to and acceptable by both. We do not find, nor do we infer therefrom, that these negotiations were conducted in bad faith. The many contacts had between the parties certainly manifested a desire for settlement on the part of the defendant rather than conduct which would constitute arbitrariness, capriciousness or want of probable cause condemned by the statute. These efforts were made in the hope of persuading rather than forcing what’ each party considered a fair and just settlement. At no time prior to the filing of suit did the defendant arbitrarily refuse or disclaim any monetary liability under the terms of the policy.
 

 The policy further provided that the plaintiff and the defendant enjoyed the privilege of requesting the appointment of two appraisers and an umpire to determine the amount of damages in the event of disagreement of said amount. It appears that some efforts in that respect were made in an attempt to end their disagreement, but without avail.
 

 This matter having reached an impasse, suit was then filed. At the beginning of
 
 *790
 
 the trial a formal tender of a sum believed by the defendant to be sufficient to cover the damages Was made; and we must assume that said tender was made in good faith, there being no contrary showing.
 

 We, therefore, conclude that under the •circumstances here presented, the statutory penalties and the fees of attorneys are not recoverable by plaintiff.
 

 The judgment of the district judge ordered plaintiff to retain the salvage value of the automobile, and presumably, deducted the established salvage value of $400 from his award to plaintiff, notwithstanding the fact that the defendant through its agents took possession of plaintiff’s automobile, which it still retained on date of the trial below. We agree with the principle of law established in the case of Gibson v. Glens Falls Ins. Co., 111 Neb. 827, 197 N.W. 950, 951, which held:
 

 “ * * * When an insurance company, after damage to property on which it holds a policy of insurance, takes possession of the damaged property and retains the same it is not entitled, in the measurement of damages in an action upon the policy, to have any deduction made because of the salvage. * * * ”
 

 Accordingly, since no deduction of salvage value may be made from plaintiff’s award, said salvage value, whatsoever it be, is hereby held to be the property of the defendant.
 

 In argument before us, plaintiff conceded the abandonment of his claim for $64 representing interest paid by him to the.mortgagee, Rapides Bank & Trust Company, which interest incurred on a note representing a part of the purchase price of the automobile in question.
 

 For these reasons, the judgment of the -lower court is reversed, set aside and recast so as to read:
 

 It is, accordingly, ordered, adjudged and decreed that there be judgment in favor .of plaintiff, Wiley McMahon, and against the defendant, Manufacturers Casualty Insurance Company, in the full sum of $2,450 with legal interest from date of judicial demand until paid.
 

 It is further ordered, adjudged and decreed that the defendant, Manufacturers Casualty Insurance Company, retain the salvage value of the automobile herein involved.
 

 It is further ordered, adjudged and decreed that plaintiff’s claim for statutory penalties and attorney’s fees be, and the same is hereby denied. All costs are to be borne by the defendant.
 

 HAMITER, J., concurs in the decree.
 

 HAWTHORNE, J., absent