88 So.2d 5

## BARRETT DIVISION OF ALLIED CHEMI-CAL & DYE CORPORATION

v.

## KENNEDY SAW MILLS, Inc., et al.

No. 42437.

May 7, 1956.

Eugene J. Coen, Shreveport, for plaintiff-appellant.

Cook, Clark, Egan, Yancey & King, Shreveport, for defendants-appellees.

SIMON, Justice.

The Barrett Division of Allied Chemical & Dye Corporation seeks to recover the sum of $8,104.78, with 5% interest from November 25, 1953, until paid, the balance due on the purchase price of creosote oil distillate allegedly sold and delivered to defendants, Kennedy Saw Mills, Inc., John E. Kennedy, Sr., and John E. Kennedy, Jr.

The defendants denied liability on the ground that they were not the purchasers of the said creosote oil distillate.

Although plaintiff instituted this suit against the defendants named herein, in solido, it reserved the right to assert the same claim against the Benton Creosoting Company, a commercial partnership, later incorporated as the Benton Creosoting Company, Inc.

Upon trial, the court below rejected the demands of plaintiff but reserved to it the right to proceed against the heirs of Max Henderson, D. E. Burchett and the Benton Creosoting Company, Inc., as prayed.

Plaintiff has appealed from said judgment and presents for consideration and adjudication by us the sole question of fact whether the merchandise was sold and delivered to the defendants herein named.

Benton Creosoting Company was organized in 1947 as a partnership engaged in the business of creosoting timber. The partnership was operated by the individual members, Max Henderson and D. E. Burchett, until the death of Max Henderson on November 14, 1952, when its operation was continued by D. E. Burchett and the surviving heirs of Max Henderson. In September, 1953, the said partnership was incorporated with its total shares of stock being issued to said partners.

Kennedy Saw Mills, Inc., operating as a wholesaler and broker in the sale of lumber and creosoted products obtained from various saw mills and creosoting plants, purchased approximately 80% of the output of the Benton Creosoting Company.

Actually most of Benton's creosoted products were sold and delivered on purchase orders made by defendant, who received the money therefor and credited the amount of the purchase to the account of Benton Creosoting Company.

The record discloses that defendant advanced loans of money to the Benton Creosoting Company, made purchases in its name, and generally assisted in the conduct of its business. Purchase orders received by plaintiff ordering creosote oils shipped to defendant saw mills were written on stationery of Benton Creosoting Company and were signed as follows: "Benton Creosoting Company, per J. E. Kennedy, Jr., v. t." A draft for the amount of Benton's weekly payroll was usually drawn on and paid through defendant's bank account. However, the Benton Creosoting Company operated its business as a separate entity with its own books of account and its own employees. Benton Creosoting Company became heavily indebted to defendant and, after being incorporated, executed a mortgage in favor of defendants for a sum in excess of $100,000 to secure the indebtedness due them.

Plaintiff had supplied Benton Creosoting Company with creosote oils prior to its incorporation, but when Benton's account fell in arrears plaintiff refused to make any further shipment to said company. In an attempt to obtain a guarantee of payment from defendant, plaintiff, on September 3, 1953, wrote to Kennedy Saw Mills, Inc.,

about the Benton Creosoting Company account as follows: "Inasmuch as deliveries for this account are made on the strength of your guarantee of payment and all previous deliveries have been paid direct by Kennedy Saw Mills remittances, we are wondering about the nature of the transaction that is causing the delay. * * *"

On September 14, 1953, the Kennedy Saw Mills replied, saying, "We do not guarantee their accounts. We are merely lending them, on their plant and inventory mortgages, and trying to assist them with their sales. Their inventories are too high and their sales too small; we have advised them to slow down their production."

On July 8, 1954, plaintiff instituted this suit and attached to its petition duplicate invoices showing the description of the merchandise delivered to defendant. All of said invoices were dated prior to the date of incorporation of Benton Creosoting Company, being Invoice No. 5–2061, dated May 7, 1953; Invoice No. 5–2152, dated May 19, 1953; Invoice No. 5–2188, dated May 25, 1953.; and Invoice No. 6–2176, dated June 23, 1953. These duplicate invoices were prepared for the purpose of showing the merchandise as being

  "Shipped to: Kennedy Saw Mills, Inc.

  "Sold to: Kennedy Saw Mills, Inc."

However, at trial in the court below it was admitted by plaintiff's credit manager that the duplicate invoices attached to plaintiff's petition and offered as the evidentiary basis of its claim were in fact not true copies of original invoices rendered for this merchandise but were invoices prepared for the purpose of this suit to obtain a judgment against the defendants. To refute such evidence and to establish the true circumstances, defendant introduced copies of the original invoices, the correctness of which was admitted by the plaintiff, which conclusively showed that the merchandise was

  "Shipped to: Kennedy Saw Mills, Inc.

  "Sold to: Benton Creosoting Company"

Other evidence borne out by the record to corroborate defendant's contention that the merchandise was sold to Benton Creosoting Company is that on the books of plaintiff the accounts of Kennedy and of Benton are designated by different numbers—No. 502056 and No. 065031, respectively. The duplicate copies of invoices attached to plaintiff's petition, as well as the copies of invoices introduced into evidence by defendant, bear the same customer number assigned to Benton, No. 065031, thus clearly indicating that plaintiff intended to and did sell the merchandise herein to Benton Creosoting Company and invoiced them accordingly.

Plaintiff's failure to satisfactorily account for the alteration made on the duplicate copies attached to its petition

leaves us with no alternative but to apply the principle of law that the burden of proof rests upon a party relying upon a written instrument to account satisfactorily for any erasure, interlineation or other alteration operating as a substantial change in the instrument. See Wheadon v. Turregano, 112 La. 931, 36 So. 808; Messi v. Frechede, 113 La. 679, 37 So. 600.

There is no merit or substance to plaintiff's contention that defendants are liable for the purchase price of the merchandise herein sued for on the basis of an alleged purported power of attorney executed by the late Max Henderson, allegedly exceeded by the defendants.

We find no error in the conclusion of the lower court that the merchandise was not sold and delivered to the herein named defendants. Being convinced of the correctness of the finding of fact resolved by the district court in favor of the defendants herein, we adhere to the well-established jurisprudence that the conclusion reached by the trial judge and his judgment on the facts shall not be disturbed. Nalty v. Nalty, 222 La. 911, 64 So.2d 216; Rosenthal v. Gauthier, 224 La. 341, 69 So.2d 367; Olivier v. Abunza, 226 La. 456, 76 So.2d 528; McMahon v. Manufacturers Casualty Insurance Co., 227 La. 777, 80 So.2d 405; Sunseri v. Westbank Motors, 228 La. 370, 82 So.2d 43.

In passing, we note that while this matter was pending in this court for argument, appellee filed a motion to remand this cause to the trial court so as to incorporate herein proceeding No. 20,422 of the docket of the Twenty-sixth Judicial District Court, which was filed by plaintiff herein against Benton Creosoting Company, Inc., et al. By said motion and in brief filed by appellees, we are informed that appellant instituted said action and obtained an executory *judgment by default* against Benton Creosoting Company, Inc., et al., for the purchase price of the identical merchandise shipped to defendants herein against whom they now seek a moneyed judgment.

In view of our holding herein, there is no necessity for us to consider this phase of the case.

Accordingly, for the reasons assigned, the judgment appealed from is affirmed.