BAILES, Judge.
The principal demand is a suit on open account. American Bitumuls and Asphalt Company sued Lamco, Inc., for materials sold to and used by the defendant in the performance of a certain road contract with the Department of Highways of the State •of Louisiana. Trinity Universal Insurance 'Company was joined as a party defendant •on the ground that it was the surety on Lamco, Inc.’s bond guaranteeing faithful performance of the contract.
By third party pleadings, Trinity Universal Insurance Company seeks to obtain judgment, in solido, against Lamco, Inc., (as principal on the bond) and Paul A. Lambert and Richard Coco, as indemnitors to Trinity Universal Insurance Company for any sums of money the latter has to pay for the account of Lamco, Inc., arising out •of the performance bond furnished the Department of Highways. Lamco, Inc., and Paul A. Lambert, made third party defendants, filed answers, the latter denying that he was an indemnitor of any indebtedness of Lamco, Inc., to the third party plaintiff, 'Trinity Universal Insurance Company.
After trial on the merits, judgment was rendered in favor of Trinity Universal In-surance Company against Lamco, Inc., and the preliminary default theretofore entered was confirmed and judgment thereon was Tendered against Richard Coco, as prayed ■.for; but the demands against Paul A. Lambert were rejected. Trinity Universal Insurance Company appealed from the portion of the judgment rejecting its demands against Paul A. Lambert.
Hereinafter, for the purpose of simplicity, Lamco, Inc., will be referred to as Lam-co; Richard Coco as Coco; Paul A. Lambert as Lambert; and Trinity Universal Insurance Company as Trinity.
The basis for the action by Trinity against the three named third party defendants is this: That Lamco is liable because of the principal-surety relationship, and Coco and Lambert are liable under the terms and conditions of an indemnity agreement entered into between Trinity and Coco and Lambert, whereby the latter two named parties agreed to hold Trinity harmless of any loss, costs or expenses which it might sustain as a result of the issuance of the performance bond for Lamco to the Department of Highways of the State of Louisiana.
All parties agree that recovery against Lambert stands or falls, on the validity of a certain general indemnifying agreement dated December 8, 19S8, in which Lamco is the named principal, Coco and Lambert are designated as indemnitors. This instrument bears the signature “Richard Coco” and “Paul A. Lambert”. Further, it bears the signature of “C. A. Daniel” as a witness. The latter is an employee of the New Orleans agent of Trinity, who will be referred to hereinafter.
In the presentation of its case in chief, when Trinity sought to introduce into evidence the indemnifying agreement, identified as T. U. #1, Lambert objected on the ground that, among other things, the document, on its face, is suspect, because the name of the principal, Lamco, Inc., is typed with a type obviously different from the entire remaining type on the instrument. Three days of trial were consumed in Trinity’s effort to put this agreement in evidence, and during this time, it was offered numerous times. On each occasion, Lam *654 bert objected to the offering being received on the ground that the document contained a material and substantial alteration, and that the party offering it, i. e., Trinity, had not satisfactorily explained the alterations, and until that was done to the satisfaction of the court, the document should not be received.
The trial court finally definitively ruled that the document was inadmissible. In part, the court’s reasons for excluding the document are found in the following language of its opinion:
“ * * *
“This Court refused to admit the contract of indemnity, identified as T. U. #1, into evidence because of the repeated objection of Lambert predicated upon the suspicious nature of the document and Lambert’s persistant (sic) denial of signing same. The contract clearly evidences to the untrained eye that the word “LAMCO, INC.” found on the front page of the agreement to identify the principal in the contract is typed in characters obviously coming from a different typewriter than that used to prepare the remainder of the agreement thus creating some suspicion or doubt that the word LAMCO, INC. was on the contract at the time the same was signed. * * *.
“The burden of proof rests with the plaintiff. That LAMCO applied for and Trinity Universal issued the bond on the job in question is not disputed. The burden of proof by a fair preponderance of evidence to remove the suspicion from the impeached and possibly altered document must also rest with the plaintiff. * * *.
“There can be little question but what the addition of the words “LAMCO INC.” into the document as principal materially altered the document as to any signer if afixed (sic) after his signature and without his consent. ‡ ^ ^
“ * * * But as to the document itself, T. U. #1, because of the variance of the typed characters creating a suspicion that the same was inserted after the signing and the lack of the Trinity Universal to offer any reasonable explanation or testimony to lift the cloud of suspicion, this court must hold the document is suspicious, not admissable (sic) into evidence as to Lambert and the contract not proven. * *
(Emphasis supplied by the court)
Actually, Lambert’s objections to the indemnifying agreement are based on two obvious physical facts of the said agreement. The first obvious physical fact is that of an erasure following the signature of Richard Coco. It appears that two letters were placed on the document on the same line immediately following the said signature of Richard Coco. Let it be added for clarity that there is no erasure whatever about the signature of Paul A. Lambert, and none is contended for by Lambert.. The other obvious physical fact is that the words “LAMCO, INC.” are written with, a typewriter bearing a type different from that of the typewriter used to fill in certain other blanks of the agreement. It should be emphasized for better understanding of the question before the court that there is no question of an erasure of some prior writing where the words "LAMCO, INCT are found in the agreement, and no one contends there was an erasure or interline-ation.
 Let us first dispose of the defense or objection based on the erasure after the signature of Richard Coco. After study of this erasure, it is apparent, even to the unaided eye, that the two letters that were partially erased were “V. P.”. These two letters would serve no purpose in this document, nor form any part of the signature-of Richard Coco, would add nothing to the document or the signature, nor take anything from the signature. Thus, it is simply an erasure. It is not of a material or substantial part of the contract, and is of no *655 consequence. However, Lambert contends that these letters are or were C & L, designating the joint venture “Coco & Lambert.” We hold that it is an erasure of the letters V. P. Furthermore, the only person that can complain about an erasure of this type at this place on the document is Richard Coco, and he has made none.
We pass now to a discussion of the other alleged alteration. We cannot place upon the document the label of suspicion, as did the trial court, for the reasons to be hereinafter stated. It should be kept in mind that Lambert contends if the document contains his signature, which he denied at times, and at other times simply refused to admit, that his signature was placed on a document that was an indemnifying agreement with or for the joint venture of Coco and Lambert, or C & L, and absolutely not for Lamco, Inc., as principal. However, we are to later find him admitting that he signed the agreement in blank.
The facts and circumstances surrounding the relationship of the parties at about the date of the instrument, i. e., December 8, 1958 are these: Lamco was a small closely held corporation organized by Lambert and Coco in about July, 1958. The apparent purpose of its organization and incorporation was to afford Coco and Lambert a joint venture under the protection of a separate entity, a corporation. Sometime about December, 1958, Lamco needed a performance bond, and according to the testimony of Mr. Dumville, of the bonding department of Trinity, Lamco’s capital structure did not warrant a bond without a personal indemnifying agreement as security for Trinity; in furtherance of furnishing Lamco a bond, Mr. Dumville requested Mr. Pittman Johnson of Meyers, Whitty & Hodge, Inc., Trinity’s New Orleans agent, to obtain such an agreement from Coco and Lambert; the agreement was prepared and forwarded to Mr. Daniel, who in turn, secured the signatures to the agreement and returned it to Mr. Johnson. The latter, on December 10, 1958, forwarded the agreement to Trinity in Dallas. Mr. Coco testified that he signed the document, and that the- other signature was that of Lambert. Coco testified that he signed the instrument for the purpose therein stated, to indemnify Trinity for Lamco. Trinity produced every witness who had anything to do with the confection of the agreement. Mr. Dumville testified that on one occasion in 1960 he wrote Lambert that if Lamco did not discharge its obligations that he, Lambert, would be liable therefor. No protest was heard from Lambert in response to that letter. Mr. _ Whitty of Meyers, Whitty and Hodge, Inc., testified that in 1959 he had two separate conversations with Lambert regarding bonds for Lamco. The first was a telephonic conversation in New Orleans in which Lambert requested Whitty not to write any bonds for Lamco without his, Lambert’s, approval because he knew he was responsible for Lamco; and the second conversation, of the same tenor, took place in Baton Rouge sometime later.
The following testimony is pertinent to the issue involved. Lambert, the third time he was placed on cross-examination by the plaintiff, testified as follows:
(Page 160 of testimony)
“Mr. Seale:
“Q. Mr. Lambert, I am not going to present to you this document that we referred to as ‘T-U — 1’ because I am sure you are familiar with it now. I would like to ask you if at the time you signed that document, it was blank where the word ‘Lamco’ is now to be seen?
“Mr. Howell: I obj ect, it is repetitious, we went into that at great length yeaterday. The witness has already testified that he didn’t sign this particular document in this form. He just asked him the question again, may it please the Court.
“BY THE COURT: Subject to the objection, I see no harm in asking the question.
*656 “A. If the signature on the document—
“Mr. Seale: May it please the Court, I submit that the witness should answer the question, and then if he wants to explain it, he can. I didn’t say word one about his signature. I asked him, ‘ — ■ if where the word “Lamco” is written, was it blank?’
“BY THE COURT: Answer the question, and then you may explain it if you wish.
“A. If this was a joint-venture agreement, it was blank where 'Lam-co’ was.”
It is too plain to ignore that Lambert was much less than candid with the court in his testimony. He was on cross-examination three times by Trinity, and not until the last time did he admit even tacitly that he signed this particular document, and then admitted that it was signed in blank. The fact that Lambert did, in fact, sign this agreement is too well established to warrant discussion. During the first two cross-examinations, he was repeatedly evasive, evaded direct answers to plain and simple questions about his signature, and he equivocated in his testimony regarding the execution of the instrument. His testimony, to be as charitable as possible toward him, was not impressive.
None of the witnesses that were called for Trinity could recall with much particularity the facts surrounding the insertion of the name LAMCO, INC., in the instrument, or why it appeared in type of a different character to that of the rest of the instrument; however, to us this appears understandable because five years had elapsed between the confection of the instrument and the trial of this matter. Considering the number of transactions handled during this time by Trinity and its New Orleans agent it is additionally understandable.
Lambert contends “that when suspicious circumstances tending to discredit a document appear either upon its face or from intrinsic facts the burden of removing such suspicions is upon the party seeking to use the instrument before the instrument may be introduced in evidence” citing McMicken v. Beauchamp, 2 La. 290, and Wheadon v. Turregano, 112 La. 931, 36 So. 808. In neither of these cited cases do we find any parallel to the instant case. Lambert also cites: Brashears v. Barnett, La.App., 155 So. 909, where a date was changed by erasure of one date and an insertion of another; and Barrett Division of Allied Chemical & Dye Corporation v. Kennedy Saw Mills, (1956) 230 La. 143, 88 So.2d 5, involving alterations of duplicate copies of invoices. We find neither of these cases have any application here.
Taking the position most favorable to Lambert that the testimony allows, and that is that the blank provided in the printed form of the agreement for the insertion of the name of the principal was blank at the time the indemnitors affixed their signatures, we are unable to agree with the ruling of the trial court that the document was impeached, suspicious and not admissible in evidence.
The defendant’s objection to the introduction of the document on the grounds urged is without merit in view of the defendant, Lambert, admitting that he signed the agreement in blank.
Viewed in the light of the circumstances surrounding the relationship of the parties in December, 1958, if the words “LAMCO, INC.” were not in the document at the time of the signing, there was a clear and definite understanding that Lamco was the principal named in the agreement, and in the event it was added after the signatures were placed thereon, there was, if not expressed, implied authority to complete the document by insertion of the words, LAMCO, INC.
*657 3 C.J.S. Alteration of Instruments § 62, p. 976, states:
“Blanks of any description left in writings not under seal may, except as prohibited by the statute of frauds, be filled in in pursuance of mere parol authority, and it may be laid down generally that if one signs an instrument containing blanks he must be understood to intrust it to the person to whom it is delivered to be properly filled in, according to the agreement between the parties, and, when so filled in, the instrument is not considered altered so as to invoke the technical rules therefor and it is as good as if originally executed in complete form. * * *»
And, in § 63, this is stated:
“Authority to fill the blanks in an instrument may be implied from the character of the instrument or the general agreement and previous relationship of the parties, and where done in pursuance of such authority it does not constitute a material alteration. * * * ”
From the relationship of the parties as of the time of the confection of the agreement we cannot assume that the in-demnitors did an idle and foolish thing of placing their signatures on a worthless document, because the document would be worthless as evidence of the agreement therein recited without the name of a principal.
Whoever signs or executes an instrument bearing blanks and later contests the. correctness of the completion of the blanks, bears the burden of proving by a preponderance of the evidence that the document was completed in a manner not agreed to between the parties.
As there is no question involved here of an erasure or interlineation, but only that of filling a blank, and the filling of which was in the contemplation of the parties, the general rule followed in this jurisdiction and expressed in McMicken v. Beauchamp, supra, and Wheadon v. Turregano, supra, requiring the party who relies on an instrument containing erasures, interlinea-tions and alterations to satisfactorily account therefor, is inapplicable here.
For the foregoing reasons, we find that Trinity made due proof of the proffered document, T. U. #1, by more than a preponderance of the evidence, and that the trial court erred in not admitting it into evidence.
Passing now to the legal effect of the document, we find that Lambert agreed “To indemnify the Company (meaning Trinity) from and against any and all liability, loss, costs, damages, attorneys’ fees and expenses of whatever kind or nature which the Company may sustain or incur by reason or in consequence of executing any such bond or bonds as surety or co-surety or procuring upon its full indemnity, etc.” Under the express terms of this document Lambert is liable to Trinity for the amount it has paid to the plaintiff in the main demand.
We find that appellant, Trinity Universal Insurance Company, is entitled to judgment as prayed for.
Accordingly, there is judgment herein in favor of Trinity Universal Insurance Company and against all third party defendants, in solido, in the amount of $664.45, together with legal interest thereon from date of judicial demand until paid, and for all costs of these proceedings.
The claim of Trinity Universal Insurance Company against the third party defendants, Richard Coco and Paul A. Lambert, for attorneys’ fees is dismissed as of non-suit.
Reversed and rendered.