SIMON, Justice.
 

 Plaintiff, Dr. Ceril S. Scheppegrell, instituted this suit against the defendant, William E. Barth, painting contractor, seeking the recovery of $5,820 as damages for the alleged breach of a painting contract entered into on or about June 8, 1956, predicated on the assertion that plaintiff ■derived no benefit from the defective work, and in addition suffered damages for family inconvenience, curtailment of the normal use of his residence, and that of unsightly household disorder as a consequence of the defective work.
 

 Plaintiff alleges that under the terms and conditions of the contract defendant was to furnish all labor, material and equipment for the painting of the complete interior of his residence, No. 20 Fontainebleau Drive, New Orleans; that the work was completed on July 23, 1956; and that payment in full in the amount of $1,100 was made shortly thereafter. Plaintiff further alleges that during the month of October, 1956, the paint on the living room ceiling of his residence began to crack and peel off; that this condition became general throughout his residence until, at the time of the trial below, the walls, ceilings, and woodwork of all the rooms, with the exception of the rear bedroom, were peeling, cracking, and separating from the surface; that since October, 1956, his residence has been in a state of continuous disrepair and disorder; and that this deterioration of the work performed by defendant has not ceased or abated.
 

 Plaintiff further alleges that he has obtained bids from reliable painting contractors in the City of New Orleans in an effort to fairly estimate the damages resulting from the improper performance by defendant of his contract. Accordingly, he seeks damages of $2,820 to place the
 
 *45
 
 interior of his residence in a satisfactory and liveable condition as originally contemplated by the contract, and $2,000 for the inconvenience and curtailment of the use of his residence occasioned him and that of his family and severe discomfort in connection therewith from October, 1956, until date of judicial demand. He also claims $1,000 for the inconvenience, upset and disorder caused by dust, paint odor and the presence of workmen throughout the house during the period that the painting job is being redone, or a total of $5,820.
 

 Defendant admitted the execution of the foregoing agreement, but denied the charge of any improper performance of his obligations thereunder as well as the damages asserted by plaintiff.
 

 The trial court awarded judgment in favor of plaintiff in the amount of $2,-911, together with legal interest thereon from date of judicial demand until paid, and all costs. Defendant has appealed.
 

 There is no dispute as to the existence of the contract nor of the terms thereof, the sole issue being whether defendant’s performance of his obligations thereunder were such as to authorize recognition of plaintiff’s claims.
 

 Hence, we see that tHe issue involves no principle of law but one purely of fact. Under such circumstances, an analytical disposition of the facts and the conclusion reached by the trial judge should not be disturbed in the absence of manifest error. Holmes v. Triggs, 214 La. 1083, 39 So.2d 739; Nalty v. Nalty, 222 La. 911, 64 So.2d 216; Rosenthal v. Gauthier, 224 La. 341, 69 So.2d 367; Olivier v. Abunza, 226 La. 456, 76 So.2d 528; McMahon v. Manufacturers Casualty Insurance Co., 227 La. 777, 80 So.2d 405; Sunseri v. Westbank Motors, 228 La. 370, 82 So.2d 43.
 

 The controlling facts disclosed by the record are as follows:
 

 Plaintiff and defendant entered into an agreement on June 8, 1956, under the terms of which defendant was to furnish all labor, material, and equipment for painting the complete interior of plaintiff’s residence. The contract additionally called for the following:
 

 “Cleaning:
 
 All ceilings and side walls to have all old wall paper removed, and all defective plaster to be repaired and then to be thoroughly cleaned, sand papered and dusted off.
 

 "Painting:
 
 All ceilings and side walls to receive two (2) coats of paint. 1st coat wall Primer and 2nd coat flat wall paint.
 

 "Wood Trim:
 
 All wood trim and complete kitchen and breakfast room to be thoroughly cleaned and grease removed and then to receive two (2) coats of paint. 1st coat Enamel under coater, 2nd coat Semi-Gloss or egg
 
 *47
 
 shell as preferred. Interior of all lockers not included in this contract.”
 

 The record reveals that the work to be performed under the agreement between plaintiff and defendant was completed on July 23, 1956. About the middle of October, 1956, plaintiff noticed that the paint on the living room ceiling had begun to crack and peel in two spots. He immediately called defendant who, after an examination of the condition, stated that he would correct the situation. About a week later defendant returned to repair the two spots in the living room only to find that substantial amounts of paint had begun to crack and peel in other places in the living room and in other rooms throughout the house. At that time the defendant informed plaintiff that he would repair the damage then present and observable, but would do nothing about any subsequent deterioration or defects which might occur. Plaintiff testified that, despite defendant’s promises, the damage remained unrepaired. Sometime after Christmas, 1956, plaintiff again called defendant, who stated that he would have to charge for any repairs which he might make.
 

 Plaintiff introduced into evidence two estimates which he obtained in connection with the repainting of the interior of his house, one from Frank J. Matthews Company, Painters and Decorators, on January 30, 1957, for $2,820; and another from Phillip J. Lunt, Painter and Decorator, on October 11, 1957, who submitted a bid of $2,411.
 

 Dr. Scheppegrell further testified that he has been inconvenienced by the continuous state of disorder and disrepair in his home, especially because he has several very young children, including one born in June, 1957, approximately a year after defendant completed the painting which plaintiff contends caused the severe discomfort to him and his family.
 

 To substantiate his claim that the work was defective, Dr. Scheppegrell offered as an expert Mr. Phillip J. Lunt, who submitted one of the bids heretofore mentioned. He testified that upon examining the premises he found certain areas peeling on the walls and ceilings. He further testified that if he had performed the painting originally and this situation had developed, he would have felt compelled to do it over again.
 

 Dr; Scheppegrell also produced as an expert Mr. Cecil B. Shilstone of the Shil— stone Testing Laboratories, whose testimony was to the effect that the cracking and peeling was a result of the failure of the new paint to bond with the wall surfaces, which had not been adequately cleaned of previous paint film or films and that the contract had, not been complied with in this respect.
 

 Defendant in his testimony asserted that he had fulfilled all the termsof the contract
 
 *49
 
 but had not and could not guarantee how long the paint would last. While admitting that the paint had peeled and cracked, he denied that he had made any promises to plaintiff in respect to remedying the defects, but on the contrary advised him that the damage could be remedied only by papering the surfaces and applying paint over the paper.
 

 Defendant produced Mr. Walter Beyer, painting contractor, who testified that in his opinion the cracking and peeling'was probably caused by moisture which was present because of possible leaks in the roof. However, on questioning, Mr. Beyer admitted that at the time of his examination he could find no moisture in the plaster nor could he account for cracking and peeling in the middle of a wall where there was no moisture above or below, nor did he explain how this moisture could affect the woodwork, or how this moisture could be so prevalent as to affect the entire interior of the residence.
 

 On rebuttal Dr. Scheppegrell conceded that the roof had leaked in several places before he made the contract with defendant, but that these leaks had been repaired prior to the painting. He also admitted that the roof had leaked over the breakfast room after the interior of the house had been painted, but claimed that the paint had already peeled and fallen from this section of the ceiling before the leak occurred, and that there had been no other leaks although the damage was widespread throughout the house.
 

 The trial judge found, after hearing the evidence and making a personal inspection of the premises, that defendant’s performance of his obligations under the contract was defective, and that, therefore, plaintiff was entitled to damages. Although he has not favored us with written reasons for his judgment nor his formula for awarding damages in the amount of $2,911, we presume the trial judge intended to award $2,411 (the low bid for repainting the interior of plaintiff’s residence) as damages for the defective work, and $500 for family inconvenience and discomfort.
 

 Our examination of the record fails to disclose any error in the trial judge’s conclusion as to damages for the defective work, however, we are not convinced that plaintiff has shown by substantial evidence that he has suffered any other measure of damage.
 

 The damage for the breach of a building contract is usually the cost of repairing the defective work, but this rule is applicable where the owner derives some benefit from the defective construction. Home Services v. Marvin, La.App. Orleans,
 
 37
 
 So.2d 413. In this case the work performed is worthless and must be completely redone. Plaintiff is entitled to be made whole and to claim the expense
 
 *51
 
 of repainting the interior of his residence. See Ilgenfritz v. Radalec, Inc., 226 La. 59, 74 So.2d 903. According to the evidence, the lowest bid for this work amounted to $2,411, and defendant is liable to plaintiff in that amount.
 

 For the reasons assigned, the judgment of the district court is amended by decreasing the award for damages to $2,411, and as amended it is affirmed. Plaintiff and defendant are to equally bear the costs of this appeal.