DECISION
Before this Court is an appeal from a March 7, 2008 decision by the Contractors' Registration and Licensing Board of the State of Rhode Island ("Board"), ordering Peter Cavanaugh of P C Enterprises ("Appellant") to pay Oscar Elmasian ("Claimant") monetary damages for breach of contract, negligence, and improper work pursuant to G.L. 1956 § 5-65-11. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 I Facts and Travel
The Claimant, a general contractor, and Appellant, a subcontractor, entered into a written contract for installation of vinyl siding on March 9, 2007. Appellant was hired to install the siding on a home, newly constructed by Claimant. On October 10, 2007, the Board received a claim by the Claimant alleging negligent work and breach of contract for Appellant's vinyl siding installation ("Claim"). Pursuant to §§ 5-65-12(d),-16, and Administrative Regulations and Construction Standards ("Regulations") § 4.4(3), Senior Building Code Official, Richard Case ("Case"), conducted an inspection of the job site on October 30, 2007.[1] Case's report stated: *Page 2 
 "A space between rake and siding was not addressed by [Appellant] even though the [C]laimant rented a lift for [Appellant] to do the siding on the dwelling and was asked to do so. [] The siding appears to be installed incorrectly creating "oil canning"[2] of the siding in areas around the dwelling. [] Another deficiency is the spacing at some seams. [] These deficiencies have also been inspected by the siding manufacturers [sic] representative."[3]
(Record Ex. 4.)
Pursuant to § 5-65-12(a)(1) and Regulations § 4.4(12), the Board's Hearing Officer held a hearing on January 30, 2008 (the "Initial Hearing") at which time a waiver of jury trial form was also executed. (Record Ex. 6.) The Hearing Officer heard testimony from the parties and considered evidence; including, five photographs of the siding job, a letter from CertainTeed Corporation ("CertainTeed"), [4] an estimate from Ramco Remodeling Construction ("Ramco") for a replacement cost, an invoice from Dana Aerial Lifts, and a written contract. (Record Ex. 7, 16.) At the Initial Hearing, Claimant sought to have all the gaps fixed. Claimant also requested the left side of the house to be stripped; the vinyl removed from the left side to be used to fix the *Page 3 
rear, front, and right side gaps; and the left side to be completely redone. (Record Ex. 9.) If the vinyl from the left side was insufficient to fix the rest of the house, Claimant wanted Appellant to strip another side and redo that side as well. Id. Appellant agreed to fix the gaps, but not to strip the left side. Id. Appellant testified, "The problems were because the product is difficult and hard to work with and [Appellant] could fix it." Id.
At the Initial Hearing, Claimant introduced evidence including photographs, letters, and his own testimony regarding the "oil canning" and gaps that existed in the siding. (Record Ex. 25.) The photographs showed "oil canning," overlaps in joints, and gaps between the siding in various areas of the house. (Record Ex. 7.) Claimant offered a letter from CertainTeed which stated that they were willing to replace 4 squares of siding "as a sales policy" to alleviate the cost to fix the problems.[5] (Record Ex. 16, 25.) Furthermore, Claimant introduced an estimate from Ramco for the removal and replacement of the siding in the amount of $8950. (Record Ex. 7.) Claimant also offered significant testimony regarding his concern of matching the color of the replacement vinyl pieces with the existing siding.[6] (Record Ex. 25.) He testified that if vinyl pieces from the left side of the house were used to fix the deficiencies on the rest of the house, then the color would match better than using new vinyl to replace the deficiencies.Id.
Appellant did not introduce any evidence apart from his own testimony at the Initial Hearing. See id. Appellant testified that there were problems with the siding, not with his workmanship. Id. Conversely, Claimant testified that there were problems with the way that Appellant installed the siding; namely, there were spaces between the siding and problems with *Page 4 
the flashing.[7] See id. Appellant also testified that he could fix the problems. Id. Specifically, Appellant testified that he "would take care of" the siding, and that he could fix the gaps. Id. ("I've got ways on figuring it out. . . . I know we can fix this."). Appellant further testified he "want[ed] a chance to fix the problems," and only replace the siding if a fix "doesn't work." Id. (Emphasis added.) However, Claimant argued that Appellant should have fixed it when Claimant requested that Appellant fix it the first time, prior to the filing of the Claim. Id.
Based on Claimant's testimony, the Hearing Officer found that "the vinyl siding has `oil canning' and gaps in places." (Record Ex. 9.) Additionally, based on the investigation performed by Case, the Hearing Officer found the following:
 "(A) [t]he vinyl siding was improperly and negligently installed as demonstrated by the "oil canning" and gaps. [sic]
 (B) [t]he gaps cannot necessarily be fixed without replacement of the siding because siding often sets to form and cannot be moved; [and]
 (C) [i]f new siding is used to fill in gaps the color will not match" ("Findings of Fact No. 4"). Id.
The Hearing Officer issued a proposed order ("Proposed Order") finding Appellant in violation of § 5-65-11(1)(i)-(iii), and requiring Appellant to pay $8950 to cover the cost to replace the siding. The Appellant was also fined $500 for improper work pursuant to § 5-65-10(a)(12). Appellant paid the fine, but disputes the cost to cover the replacement vinyl siding.
Appellant filed a timely appeal of the Hearing Officer's Proposed Order, and a hearing was held before the full Board on March 5, 2008 (the "Full Board Hearing"). Appellant also timely filed written exceptions to the Proposed Order[8] stating that: (1) the evidence received did *Page 5 
not support the findings; (2) the material supplied by Claimant was the cause of any defect; and (3) the work performed was proper and did not cause defects in the siding. (Record Ex. 11.) At the Full Board Hearing, Appellant's oral exceptions[9] all referenced the Hearing Officer's Findings of Fact No. 4. Counsel for Appellant further argued:
 "[T]here were several other issues relating to the siding job and the windows and things related to the way the siding is that he can more specifically explain that wasn't negligently or improperly done by him. . . . The second exception is on the finding that the gaps cannot necessarily be fixed without replacement of the siding because they often set in form, and the words cannot necessarily does not mean they can't be fixed. . . . [Appellant] has offered and believes he can fix whatever are the oil canning concerns that exist in this situation. And lastly, the issue about color matching. [Appellant] doesn't believe it is a concern, because this problem can be fixed before any length of time, where as there would be any finding or anything related to that." (Tr. 3/5/08 at 5-7.)
During the Full Board Hearing, the Board reviewed the evidence and exceptions filed.[10] The Board heard testimony from Appellant regarding the "J Channel windows" being "too tight" to show that his workmanship was not the cause of the deficiency. Id. at 16. The Board also heard considerable testimony from Claimant that he did not want the Appellant to fix the deficiencies because he did not want "patchwork."Id. at 17. With respect to the inspection of the job, Appellant's Counsel questioned Case: "If the contractor were to go back and replace the oil canned pieces — in your opinion . . . could that effectively bring this job up to industry standards without replacing the whole thing?" Id. at 22. Case responded, "Possibly, but the *Page 6 
matching situation, I think, would come into play. . . . I don't know how that's going to match, under our deficiencies, the rest of the house." Id.
Prior to a motion to affirm the Proposed Order, a Board member stated, "I don't feel [] there has been any evidence to point out the fact that the Hearing Officer made an error in his [sic] judgment. . . . I don't see where there's any evidence presented to us that disputes [] that."Id. at 25-26. Subsequently, the Board voted 7-2 to uphold the Proposed Order. On March 11, 2008, a final order was served on Appellant ("Final Order"). Appellant timely filed an appeal to the Board's March 7, 2008 decision, and requests judicial relief in this Court.
 II Standard of Review
Judicial review of the Board's decision by the Superior Court is authorized pursuant to § 42-35-15 of the Rhode Island Administrative Procedures Act ("A.P.A."). Section 42-35-15(g) provides as follows:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *Page 7 
In reviewing the Board's decision, this Court may not substitute its judgment for that of the agency unless its findings are clearly erroneous in view of the reliable, probative, and substantial evidence contained in the record. See Guarino v. Department of SocialWelfare, 410 A.2d 425 (R.I. 2000). When reviewing a decision of the Board, this Court lacks the authority to assess witness credibility or to substitute its judgment for that of the Board concerning the weight of the evidence on questions of fact. See Costa v. Registry of MotorVehicles, 543 A.2d 1307, 1309 (R.I. 1988).
This Court's review is limited to determining whether substantial evidence exists in the record to support the Board's decision. SeeNewport Shipyard v. Rhode Island Commission for Human Rights,484 A.2d 893 (R.I. 1984). The Rhode Island Supreme Court defined "substantial evidence" as "such relevant evidence that a reasonable mind might accept to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Id. at 897 (quoting Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). Otherwise stated, the law requires that the findings of an administrative board will be upheld even though a reasonable mind might have reached a contrary result. See D'Ambra v. Bd. of Review, Department of EmploymentSecurity, 517 A.2d 1039 (R.I. 1986). The Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981).
However, questions of law are not binding upon a reviewing court and may be reviewed freely to define the law and decide its applicability to the facts of the case. Carmody v. R.I. Conflict of InterestCommission, 509 A.2d 1307, 1309 (R.I. 1988). This Court must examine whether any competent evidence exists in the record to support the Board's findings. See Rocha *Page 8 v. Public Util. Commission, 694 A.2d 722 (R.I. 1997). This Court is required to uphold the Board's findings and conclusions if they are supported by competent evidence. See Rhode Island PublicTelecommunications Authority, et al. v. Rhode Island Labor RelationsBoard, et al., 650 A.2d 479, 485 (R.I. 1994).
 III Discussion A The Full Board Hearing Procedure
The Board has established a two-tiered standard of review. The Hearing Officer prepares a proposed order with findings of facts and conclusions based upon evidence presented at the hearing; then the Board reviews the Hearing Officer's proposed order and makes a final decision. Regulations §§ 4.4(16), 4.9; see generally Environmental Scientific Corp. v.Durfee, 621 A.2d 200, 207 (R.I. 1993) (recognizing that the Legislature has created a "funnel-like system" for evaluating problems for which a hearing officer hears and analyzes testimonial and documentary evidence, while the Department of Environmental Management director reviews the hearing officer's findings and issues a final decision). A party not satisfied by a proposed order issued by the Hearing Officer may seek a review of the decision by the full Board pursuant to Regulations § 4.9. Such an appeal may be based upon allegations of procedural errors, a lack of supporting evidence, or for any other reason. Regulations § 4.9(1).
The Board is limited, however, in what it may consider in an appeal from the Hearing Officer's proposed order. The Board is limited to review evidence received at the hearing conducted by the Hearing Officer, exceptions filed to the proposed order, and written and oral arguments relative to the proposed order. The Board may not consider new or additional evidence. Regulations § 4.9(4). The Board's review is confined to the record compiled during the underlying administrative proceeding conducted by the Hearing Officer. Id.; see *Page 9 Environmental Scientific Corp. v. Durfee, 621 A.2d at 204 (recognizing that the director sits at the narrowest point of the "funnel," so he or she is not privileged personally to hear or witness the broad spectrum of information that entered the widest end of the funnel). After consideration by the full Board, the members may "affirm the proposed order and findings of fact, modify either or both, or send the case back for a new hearing." Regulations § 4.9(5).
 B The Board's Decision
In the present case, Appellant based his appeal to the Board on "a lack of supporting evidence" for the Hearing Officer's findings.See Regulations § 4.9(1). After the Board affirmed the Hearing Officer's Proposed Order, Appellant appealed to this Court arguing the Board's findings were "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." Section 42-35-15(g)(5). Specifically, Appellant argues that the Board's finding regarding color matching of the siding with replacement pieces was "beyond" Investigator Case's testimony. Appellant contends that the Board's finding, "If new siding is used to fill in gaps the color will not match," is inconsistent with testimony given by Investigator Case. See Findings of Fact No. 4. Appellant also argues that there is no credible evidence to support the finding that "[t]he gaps cannot necessarily be fixed without replacement of the siding because siding often sets to form and cannot be moved." See id. Furthermore, Appellant argues the contention that siding often sets and cannot be moved is "a mere contention," and not "a fact on this particular job, in specific locations."
Alternatively, the Board argues that the Hearing Officer had adequate evidence to support her decision; and therefore, the Board affirmed her findings. Specifically, the Board argues that there is competent evidence to support the opinion that "with fading and new vinyl batches and siding formation," a fix will not suffice. The Board argues that Investigator Case's testimony *Page 10 
concerned the issue of fix. By reusing already installed siding, versus replacement, Case said, "I cannot see all of that siding going back to its original shape after canning." (Tr. 3/5/08 at 21.) Additionally, when asked whether replacing the "oil canned" pieces would "bring the job up to industry standards," Case replied, "[p]ossibly, but the matching situation, I think would come into play." Id. at 22. Furthermore, a Board member stated that the color "is an awful dark color," which was followed up by another Board member indicating that the darker the color, the more difficult it becomes to match it.Id. at 22-23.
The Rhode Island Supreme Court has held that when an administrative agency reviews the determinations of one of its hearing officers, the reviewing body should afford deference to the hearing officer's findings. See Environmental Scientific Corp. v. Durfee621 A.2d at 207-08 ("[T]he further away from the mouth of the funnel that an administrative official is when he or she evaluates the adjudicative process, the more deference should be owed to the factfinder."). Our Supreme Court based this deference on the fact that it was the hearing officer who actually saw and heard witnesses as they testified, while the board merely reviews a transcript of that testimony. Id. The Board in the instant case afforded the Hearing Officer deference, and it adopted all of the findings of fact made by the Hearing Officer. The Board reasoned that it found no error with the Hearing Officer's conclusion that a replacement, and not a fix, was necessary.
Notwithstanding the testimony of Appellant, there is no evidence in the record to contradict the finding of the Hearing Officer and the Board. The Hearing Officer and the Board relied on Investigator Case's report to make a finding of a deficiency. That report stated in pertinent part:
 "A space between rake and siding was not addressed by [Appellant] even though the [C]laimant rented a lift for [Appellant] to do the siding on the dwelling and was asked to do so. The siding appears to be installed incorrectly creating `oil canning' of the *Page 11 
siding in areas around the dwelling. Another deficiency is the spacing at some seams. [Appellant] was notified of the deficiencies by [C]laimant." (Record Ex. 4.)
In addition, the Hearing Officer and the Board relied upon five photographs of the house which showed "oil canning" and gaps on all sides of the house. (Record Ex. 7); see DeChristofaro v. Machala,685 A.2d 258, 267 (R.I. 1996) (finding that an expert's conclusions were sufficiently supported by facts and data including photographic evidence as support of his testimony about the condition of the house and numerous deficiencies in the contractor's performance).
Moreover, the Board considered live and former testimony from Appellant, Claimant, and Investigator Case, who all agreed there was "oil canning" on the vinyl siding. The Board members also relied upon their own expertise in finding that a patch job would not remedy this deficiency. See § 5-65-14;[11] see also DePasquale v. Harrington,599 A.2d 314, 316-17 (R.I. 1991) ("An expert administrative tribunal concerned with advancing the public welfare should not be rigidly governed by rules of evidence designed for juries. . . . [A] hearing officer may take into account evidence that would be excluded from a trial by jury if it would be prudent to do so."). In so finding, the Board implicitly rejected Appellant's contrary testimony. See Costa *Page 12 v. Registrar of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988) (A court must not substitute its judgment for that of the agency in regard to the credibility of the witnesses, or the weight of the evidence concerning questions of fact.); see, e.g., N.L.R.B. v. Erie Brush and Mfg.Corp., 406 F.3d 795, 802 (C.A.7 2005) ("The hearing officer was a front row observer for this testimony, giving her a far greater edge in making credibility determinations than we could ever hope to have in reviewing the black and white transcript.").
As such, this Court finds there is reliable, probative, and substantial evidence in the record to support the Hearing Officer's finding, as adopted by the Board, that replacement, and not a fix, is the appropriate remedy. Accordingly, the Board's denial of Appellant's claim — finding that a fix of the deficiency would be sufficient — is not clearly erroneous.
 C New Evidence Will Not Be Considered by the Board
Appellant also argues that there was no weight given to, or investigation into, Appellant's contention that the windows, previously installed by another contractor, were "too tight" causing the "oil canned" siding. The Board deemed this argument new evidence, pursuant to Regulations § 4.9(4); and therefore, not properly before the Board or this Court for consideration.
Pursuant to Regulations § 4.4(15), Appellant had an opportunity to "challenge and offer evidence to disprove the Commissions [sic] investigative report, if any, at an Administrative hearing." (Emphasis added.) At the hearing, the Hearing Officer had to prepare findings of fact and conclusions "based upon evidence received at the hearing." Regulations § 4.4(16) (emphasis added). Appellant merely mentioned this argument at the Full Board Hearing, and did not assert *Page 13 
it at the Initial Hearing. The record evidences that the Hearing Officer heard no testimony and had no evidence regarding the windows causing the deficiencies.[12]
Appellant maintains that he filed written exceptions because he believed the Proposed Order was not supported by evidence received at the hearing. See Regulations § 4.9(1). Because the exceptions were timely received, the matter was set for consideration by the members of the Board. See Regulations § 4.9(2). However, the Board may only "consider evidence received at the hearing and exceptions and written or oral argument for or against the proposed order, but the Board will not consider new or additional evidence." See Regulations § 4.9(4). At the Full Board Hearing, the following colloquy transpired:
 "[Appellant:] I told [Claimant], on March 19, that we were going to have trouble with the siding. I wrote it in this book. The J channel windows were too tight. . . . [Claimant:] Regardless if the . . . J molding corner boards, whatever part of the siding is there, [Appellant's] siding came to something that was already existing . . . and this wasn't brought up at the last hearing . . . the understanding at this hearing is that no new evidence or testimony — . [Board member:] That's correct." (Tr. 3/5/08 at 15-17.)
Appellant conceivably attempted to introduce new conflicting evidence for the Board's consideration. Appellant essentially argues that the Board erred in not giving weight to his evidence. However, by regulation, the Board has limited the scope of its appellate review.See Regulations § 4.9(4). Although the Board hears arguments from the parties, it cannot receive or consider any new or additional evidence beyond that submitted to the Hearing Officer. See Dantran, Inc. v. U.S.Dept. of Labor, 171 F.3d 58, 71 (C.A.1 (Me.) 1999) (citing Carlisle AreaSch. v. Scott P., 62 F.3d 520, 528 (3d Cir. 1995)) ("Courts have held that the authority to receive additional evidence customarily signals the power to reweigh the evidence."). *Page 14 
Likewise, just as the Board cannot consider new evidence, neither may this Court. See Rhode Island Public Telecommunications Authority v.Rhode Island State Labor Relations Bd., 650 A.2d 479, 484-85 (R.I. 1994) (finding the Superior Court is an extension of the administrative process, but is limited to an examination of the record to determine whether the agency's decision is supported by any legally competent evidence in the record). Therefore, the Board's finding that it could not consider new evidence that was not submitted to the Hearing Officer was appropriate.
 D Adequacy of Monetary Damages
Although the contract price was $9450, the Final Order required Appellant to pay the Claimant $8950 to cover the cost of the job, and $500 to the Board for fines for improper work, pursuant to § 5-65-10(a)(12). Appellant paid the $500 fine, and appeals only the monetary award. In his appeal, Appellant argues that the Board erred in affirming the Proposed Order for the payment of $9450 [sic], the "entire value" of the original contract giving no credit for any work that had been completed under the contract. As to the scope of the problem, Appellant asserts that testimony by Investigator Case — that he was unsure what percentage of the siding job had an "oil canned" effect — was inconclusive. Thus, Appellant alleges the monetary award was beyond the scope of the deficiencies. Arguing in the alternative, the Board contends this amount awarded was reasonable, based on the replacement estimate submitted in evidence. See Regulations §§ 4.3(4), 4.4(8)-(11), 4.4(20);[13] (see also Record Ex. 7). *Page 15 
Pursuant to § 5-65-16(f)[14] and Regulations § 4.4, [15] the Board has the authority to award monetary damages and fines. According to the Regulations, the burden of proof is on the claimant to show the following: that damages have occurred; that those damages have been caused by the registrant; and the monetary value of those damages. Regulations § 4.4(12). The Regulations require the claimant to "submit substantiating[16] evidence to support the amount alleged to be due [and] [] seek payment for only those items shown on the statement of claim form." Regulations § 4.4(8). The claimant may also be required to "submit an estimate for the cost of correction for the items shown on the statement of claim form," and the "estimate must be obtained from a registrant." Id.; see generally, National Chain v. Campbell,487 A.2d 132 (R.I. 1985) (determining the amount of damages sustained as a result of a party's breach must be proven with a reasonable degree of certainty, and a plaintiff must establish reasonably precise figures as to the value of the work performed).
To prove damages occurred, the Claimant introduced pictures at the Initial Hearing which showed "oil canning" and gaps in the siding on all sides of the house. Relying on these pictures, Investigator Case's Report, and testimony provided, the Hearing Officer and the Board found that the Claimant sufficiently proved Appellant's improper installation caused the damages alleged by Claimant. See §§ 5-65-11,-12(d) (stating improper installation of vinyl siding is a violation for which a monetary damages may be awarded by the Board).[17] *Page 16 
Furthermore, it is undisputed that the Hearing Officer accepted a written estimate as evidence, introduced by Claimant, which was in compliance with Regulations § 4.4(20). This replacement estimate was provided by Ramco, a registered contractor. (Record Ex. 7.) Ramco proposed to remove 13 squares of vinyl siding and install new vinyl on the left side of the house. Id. In addition, Ramco offered to replace 4 squares of vinyl from the remainder of the house with siding salvaged from the left side of the house. Id. This description of the work to be performed by Ramco corresponded with the original Claim filed with the Board by the Claimant. See id.; see also Claim. Ramco's total estimate amounted to $8950, and there was no estimate provided by Appellant.
This Court must "again reiterate that, `[t]he court is limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision.'"Rocha v. State Public Utilities Commission, 694 A.2d 722, 727 (R.I. 1997) (quoting Barrington School Committee v. Rhode Island State LaborRelations Board, 608 A.2d 1126, 1138 (R.I. 1992)). Accordingly, this Court finds the Board's monetary award was not arbitrary or capricious as the record indicates the Board's award of $8950 was supported by competent evidence offered by the Claimant. See generally, Rocha v.State Public Utilities Commission, 694 A.2d 722, 726 (R.I. 1997) ("[T]he Superior Court was not permitted to decide whether the division chose the appropriate sanction but instead to determine whether the division's finding . . . was supported by any competent record evidence."). Accordingly, this Court finds the Board did not abuse its discretion in awarding $8950 to the Claimant. *Page 17 
 E Quantum Meruit Claim
Lastly, Appellant argues that there was no consideration given to quantum meruit for work reasonably completed under the contract. Appellant claims the Board erred in not considering the work he performed to offset the amount awarded to Claimant.
Under Rhode Island law, a plaintiff is entitled to recover under a quantum meruit theory: (a) if he or she conferred a benefit on the defendant, (b) the defendant accepted the benefit, and (c) under the circumstances, it would be inequitable for the defendant to retain such benefit without payment of the value thereof. Fondedile, S.A. v. C.E.Maguire, Inc., 610 A.2d 87, 97 (R.I. 1992). It is also a well-settled rule that when a builder has substantially performed, he can recover the contract price less the amount needed by the owner to remedy the defect.National Chain Co. v. Campbell, 487 A.2d 132, 135 (R.I. 1985) (citingFerris v. Mann, 99 R.I. 630, 636, 210 A.2d 121, 124 (1965)) ("[A] contractor cannot recover on a building contract unless he has substantially performed and [] any lesser degree of performance will not suffice."). The doctrine of substantial performance recognizes that although "it would be unreasonable to condition recovery upon strict performance where minor defects or omissions could be remedied by repair," this formula is inappropriate when the "contractor's performance is worthless and the work has to be redone completely."Id. In that situation, the contractor would be liable for the cost to the claimant of having the job redone. Id. (citing Scheppegrell v.Barth, 239 La. 42, 117 So.2d 903 (1960)) (citing 13 Am. Jur. 2dBuilding and Construction Contracts § 78 (1964)).
In the instant case, Appellant has not met his burden that he is entitled to recovery under quantum meruit or the doctrine of substantial performance. Under a quantum meruit theory, the Appellant has failed to prove that he conferred a benefit on Claimant that Claimant accepted. Rather, the Board had evidence before it that Claimant rejected the work done by Appellant. See *Page 18 
Claim. Further, it would be inequitable to require Claimant to pay for services that were negligent and improper. See R B Elec. Co., Inc. v.Amco Const. Co., Inc., 471 A.2d 1351, 1356 (R.I. 1984) (quotingPaschall's, Inc. v. Dozier, 219 Tenn. 45, 57, 407 S.W.2d 150, 155
(1966)) ("The most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust."). In addition, the Board found that a replacement, not a fix, was the proper remedy implying that Appellant's performance was "worthless," and needed to be completely redone. See National Chain Co. v. Campbell,487 A.2d at 135 (determining the formula for substantial performance is inappropriate when the contractor's performance is worthless and the work has to be completely redone, and finding the contractor is liable for the cost of having the job redone). Thus, it was not arbitrary or capricious for the Board to not utilize a formula for substantial performance. See id. Accordingly, this Court finds the Hearing Officer and the Board did not abuse its discretion, and was neither arbitrary nor capricious in refusing to consider these theories in the calculation of an award for monetary damages to Claimant.
 IV Conclusion
After a thorough review of the entire record, this Court finds that the Board's decision was not clearly erroneous in light of the reliable, probative, and substantial evidence on the whole record, or affected by error of law. This Court further finds that the Board's decision was not arbitrary or characterized by an abuse of discretion. Substantial rights of Appellant have not been prejudiced. Accordingly, this Court affirms the Board's decision.
Counsel shall submit the appropriate judgment for entry.
[1] Case documented his findings in an investigative report. (See Record Ex. 2.)
[2] CertainTeed, the supplier of the vinyl siding used by the Appellant, defines "oil canning" as:
 "a terminal problem for panels with traditional nail slots; once it occurs, the face of the vinyl siding is permanently distorted and must be replaced. It is a wrinkling or buckling of the panel face, so called because when the siding buckles, it has the appearance of the bottom of an oil can. It occurs because the siding is not free to `float' and is almost always an installation problem." CERTAINTEED CORP. ON MASTER CRAFTSMAN EDUCATION DEVELOPMENT PROGRAM (2006), http://www.certainteed.com (follow "Vinyl Siding" hyperlink; then follow "Homeowner" hyperlink; then follow "Literature" hyperlink; then follow "Miscellaneous: Master Craftsman Workbook" hyperlink).
CertainTeed contends the most common causes of "oil canning" in panels with traditional nail slots are improperly cut panels, tight nailing (driving the nail tight against the nail hem), and face nailing (nailing through the front of the panel rather than through the nail slots).Id.
[3] Pursuant to the performance standards set forth in Administrative Regulations and Construction Standards ("Regulations") § 6.0 Rulesconcerning thermal and moisture protection (4)(c)(1),
 "The accepted tolerance level for expansion/contraction is 1/2" in a 12' distance. This siding shall be hung in accordance to industry standards to allow for proper expansion and contraction in order to reduce possibility of oil canning. Panels should be properly overlapped in order to avoid seams from opening (1/2" to 1 1/4"). Vinyl siding should never be faced nailed. Fading may occur due to the variety of light and elements. High gloss siding may reflect ripples."
[4] Claimant supplied Appellant with the siding used for installation, from CertainTeed, a manufacturer of vinyl siding. (See Tr. 3/5/08 at 17-18.)
[5] Claimant testified that CertainTeed made this offer because Claimant has been a good customer of "Harvey," who purchased the vinyl siding from CertainTeed. (Record Ex. 25.)
[6] In its estimate, Ramco Remodeling offered to remove 13 squares of vinyl siding from the left side of the house and install new siding to the same. In addition, Ramco Remodeling offered to remove and replace approximately 4 squares of siding that was improperly installed on the remainder of the house with siding that was salvaged from the left side. (Record Ex. 7.)
[7] Flashing is "a thin layer of waterproof material that keeps water from getting into places it doesn't belong." Gibson, Scott.Flashing — What is it and why is it important?,http://www.oldhouseweb.com/how-to-advice/flashing-what-is-it-and-why-is-it-important.shtml
(last visited November 10, 2008).
[8] Pursuant to Regulations § 4.9(1), a
 "[c]laimant or contractor may file written exceptions if they believe that the Commission has made a procedural error or that the proposed order is not supported by evidence received at the hearing or for any other reason. To be considered, exceptions must be received by the Commission within 20 days of the date of mailing of the proposed order. . . . If written exceptions are not timely received, the Commission may issue a final order."
[9] Pursuant to Regulations § 4.9(3), a "[c]laimant and registrant, and/or their attorney(s), may appear before the members of the Board to argue for or against the proposed order. Oral argument will be permitted only if the original exceptions were timely received."
[10] Pursuant to Regulations § 4.9(4), "[a]t the meeting of the members of the Board, the Board will consider evidence received at the hearing and exceptions and written or oral argument for or against the proposed order, but the Board will not consider new or additional evidence."
[11] Section 5-65-14 provides:
 "(a) The board shall consist of fifteen (15) members appointed by the governor, eight (8) of whom shall be registered contractors, of which two (2) shall be licensed roofers; one shall be a current member of the building codes standards committee pursuant to § 23-27.3-100.1.4; one shall be a representative of the general public; one shall be a licensed and practicing architect; and two (2) shall be licensed home inspectors; one who shall be the president of the Rhode Island Builders Association or designee; and one who shall be the executive director of the Rhode Island Association of General Contractors or designee. The building code standards committee member shall be designated by the state building commissioner, and shall be appointed as provided in subsection (b) of this section. . . . (c) In order to be eligible for board membership, the six (6) contractor members of the board must be registered and/or licensed under this chapter and maintain their registrations and/or licenses in good standing during their term of office. In order to be eligible for board membership, the two (2) home inspector members shall be licensed pursuant to chapter 65.1 of this title and shall maintain their license in good order during their terms of office."
[12] At the Initial Hearing, Appellant testified that it was the framer's fault in regards to the gaps between the siding, not as to the "oil canning." (Record Ex. 25.)
[13] Regulations § 4.4(20) provides:
 "Estimates are required prior to an Administrative hearing or at the hearing to be used as the basis for a monetary award. All estimates must be from registered contractors, if work to be conducted requires a registration. . . . A monetary award may be determined by the hearing officer from the contract balance or for repair work at the hearing officers [sic] discretion, based on his/her expertise."
[14] Section 5-65-16(f)(1) states that "the board shall have the power and authority to award monetary damages and fines provided by this chapter."
[15] Regulations §§ 4.4(16), (18) provides:
 "The proposed order may order the registrant to pay monetary damages to the claimant, send the contractor back to repair, or order a combination of monetary damages and repair work, or dismiss the claim. . . . Final orders issued may reflect a monetary award if the proposed order was not fulfilled."
[16] Black's Law Dictionary (8th ed. 2004) defines "substantiate" as, "establish[ing] the existence or truth of (a fact, etc.), esp. by competent evidence; to verify."
[17] "The board shall . . . accept and make determinations of the following types of claims for damages against contractors registered [including] . . . [n]egligent work . . . [and] [i]mproper work. . . . If the board determines that a violation . . . has occurred, the board shall order any action deemed appropriate, including . . . compensation to the claimant for any damages incurred as the result of the violation or claim." Sections 5-65-11,-12(d).